Samuel C. BALDERMAN,
M.D., Plaintiff,

v.

UNITED STATES VETERANS ADMIN-ISTRATION and Veterans Administration Medical Center, Defendants.

No. CIV-85-397C.

United States District Court,
W.D. New York.

July 31, 1987.

John A. Galeziowski, Buffalo, N.Y., for plaintiff.

Roger P. Williams, U.S. Atty. (Martin J. Littlefield, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendants.

CURTIN, Chief Judge.

Plaintiff Balderman first brought suit in this court in 1983 (CIV–83–1451C). After oral argument, I granted defendants' summary judgment motion on June 29, 1984. In this decision, I found that, as a permanent part-time medical employee of the United States Veterans Administration, plaintiff was not entitled to notice and a hearing before his hours and clinical privileges were reduced. *See* 38 U.S.C. §§ 4110(a), 4114(a)(1)(A). This decision was affirmed by summary order by the Second Circuit on December 31, 1984.

Plaintiff now brings the instant suit following his discharge from employment in August of 1984. He has also filed a subsequent lawsuit, CIV–86–433C, alleging that his termination was based on religion and in retaliation for his filing of a complaint with the Equal Employment Opportunity Commission [EEOC]. In this latter suit, plaintiff further alleges that the reduction of his hours, as discussed in CIV–83–1451C, was based on religion.

In defendants' moving papers, they argue that the instant suit should be dismissed on the grounds of *res judicata* and collateral estoppel (Item 5, pp. 3–10). According to defendants, the first lawsuit filed by plaintiff Balderman essentially revolved around one issue: "the rights that are accorded to a professional non-civil service VA employee when his employment status is converted from full-time to part-time." *Id.*, p. 4. Further, defendants contend that plaintiff is bound "both as to those grounds or issues ... not actually raised and decided in that action." *Saylor v. Lindsley*, 391. F.2d 965, 968 (2d Cir.1968). Defendants say that because plaintiff "had every opportunity" to raise his claim that defendants failed to follow applicable VA procedures in his conversion from full-time to part-time in 1981 in his first lawsuit, his failure to do so "forbids him from raising such an argument both now and at any future time." Item 5, p. 7.

I disagree. As plaintiff's attorney points out in his memorandum of law (Item 8), the issue of plaintiff's conversion from full to part-time in 1981, as well as the issue of plaintiff's part-time status, was never discussed in the context of earlier litigation before this court, despite defendants' suggestions to the contrary. Instead, plaintiff simply alleged that he was part-time in his original complaint, and this assertion was not disputed by defendants. Moreover, plaintiff points out that the termination which is the subject of his second suit occurred approximately 40 days after judgment was entered in plaintiff's first action. Given all of the above, defendants' motion

to dismiss on *res judicata* grounds is denied. I also find defendants' collateral estoppel argument without merit in the context of this case and, therefore, it must also be denied.

*Propriety of Plaintiff's Conversion from Full-Time to Part Time in 1981*

As is described in the affidavit of plaintiff Samuel Balderman (Item 7), in June of 1981, plaintiff requested and was granted a change from full to part-time permanent employment with the defendant Veterans Administration so that, as an Assistant Professor of Surgery at the State University of New York at Buffalo Medical School, he would "increase [his] availability for university related activities at S.U.N.Y. affiliated hospitals." *Id.* at ¶ 5. As is set out in Exhibit B to plaintiff's affidavit, plaintiff was clearly informed by defendants that, effective with this conversion to part-time employment, plaintiff's salary, life insurance benefits, retirement benefits, and leave credits would be reduced. However, plaintiff says that he was not informed that his conversion could result in any loss or diminution of rights, privileges, or job security (Item 7, Exhs. B and C). Plaintiff now argues that, because the defendants failed to comply with the proper conversion procedures by not advising him of a loss of job security with his acceptance of part-time employment, his part-time appointment was never "properly effected." Accordingly, plaintiff argues that he retained the seniority and other substantive and procedural rights that he had obtained prior to the conversion (Item 7, Exh. D). Moreover, plaintiff says that he was not aware of the regulations concerning "conversions" until mid-August 1984 and that, if he had known that a conversion to part-time would result in the loss of job security and retention status and a forfeiture of procedural rights, he would definitely not have requested or accepted the conversion. Item 7, ¶ 22; Item 8, pp. 19–26. *See* VA Manual, Part II MP–5, Chapter 2, ¶ 11(a).

Plaintiff says that this regulation requires that an employee to be converted must be advised in writing of the conditions of employment, including all lesser rights and benefits accompanying such new appointment. Plaintiff says that this regulation undoubtedly contemplates advising an employee of changes in non-monetary rights, such as seniority, as well as financial benefits. *See also* Item 12, pp. 5–9. Accordingly, plaintiff says defendants' argument to the contrary robs the regulation of its intended substance.

In response, defendants argue that they fully complied with all applicable VA regulations when they advised plaintiff of the consequences of his conversion from full-time to part-time employment. More particularly, defendants say, contrary to plaintiff's position, that they complied with VA Manual, MP–5, Chapter 2, ¶ 11(a). This states:

> Conversions to another appointment under 38 U.S.C. Chap. 73, giving employees less rights and benefits may not be effected until he has been advised in writing of the conditions of employment under the new appointment; and has submitted a written resignation or other written evidence clearly indicating voluntary (separation) from his previous employment.

Defendants say that, while the broad wording of the regulations does not stipulate exactly what must be contained in the written advisement to the employee, the letter from Robert Westfall attached to plaintiff's affidavit (Item 7, Exh. B) is clearly sufficient for these purposes. Even if this court determines that defendants did not fully comply with the notice requirements described in the regulations, defendants say plaintiff should not be allowed to retain full-time status now. Defendants say that, in choosing to become a part-time employee, plaintiff relinquished certain benefits—including his 38 U.S.C. § 4110 rights and benefits—while gaining other and different benefits, especially the right to carry on an "outside practice." *Cf.*, 38 U.S.C. § 4108; VA Manual MP–5, Part II, Ch. 13, ¶ 6(a); Item 5, Exh. C., affidavit of Dr. Joseph Caruana. Defendants assert that because plaintiff initiated the conversion from full to part-time, he should not be permitted to read the language of the regu-

lations broadly in order to avoid the consequences of his own voluntary action.

In their reply papers (Items 13–16), defendants note that, in addition to the letter from Robert Westfall received by plaintiff regarding his conversion to part-time employment, plaintiff also signed a statement which stated: "I do understand all of the conditions, including the loss of benefits of converting to part-time employment" at that time. *See* Item 16, Exh. A, p. 102.

As all parties acknowledge, there are no cases which directly discuss VA Manual, MP–5, Chapter 2, ¶ 11(a), and what the term "conditions of employment" means. Although plaintiff was clearly informed about the reduction of salary and other benefits which would accompany his conversion from full to part-time, he was never told that this conversion would make him ineligible for a hearing or would affect his job security in the event of cutbacks.

Notwithstanding the above, defendants cite the case of *Nataraj v. United States*, 85–CIV–5120 (D.N.J.1985), as support for their position. In that case, plaintiff Nataraj sought declaratory and injunctive relief as well as damages, alleging that she was a full-time employee of the Veterans Administration within the meaning of 38 U.S.C. § 4110. As is the case here, the Veterans Administration opposed this argument and said that plaintiff was clearly a part-time employee and, as such, was properly terminated without cause on two weeks' notice. 38 U.S.C. § 4114.

In coming to its decision in *Nataraj*, the district court found that, on or about April 15, 1984, plaintiff was granted a change to part-time status pursuant to a request she had made approximately one month before. *See Nataraj v. United States, supra* at Exh. I. The court also found that, thereafter, Dr. Nataraj received various written and oral notifications regarding her status as a temporary medical employee and the consequences of this status, specially in the area of compensation, leave, and insurance benefits, as well as vacation and hospitalization. *Id.* at p. 4. However, as in the instant case, Dr. Nataraj did not receive any express notification regarding her entitlement to a hearing upon termination. *Id.* at pp. 4–5.

Based on these facts, the district court in *Nataraj* rejected plaintiff's argument that she was entitled to a hearing prior to termination and denied her application for relief. In part, it said:

> As a result of these events in March and April, 1984, it is entirely clear that plaintiff knew that her status had been altered beyond a mere reduction in hours. She knew that her status had been changed from a full-time to a part-time employment. This is evident not only from Exhibits I and II annexed but also upon all subsequent personnel forms ... which contain a "P" for part-time under the category "Work Schedule." The Court does not find that Dr. Nataraj was privy to any "common knowledge," due to publications or conversations circulating among V.A. physicians, that she could be terminated without cause or a hearing as a part-time employee. This Court does determine, however, that inherent in a knowing change in employment from full-time to part-time status there is notice or reason to know that such a physician's "tenure" might be materially effected. Stated otherwise, the onus and burden was upon Dr. Nataraj to investigate fully these ramifications before making her own decision to alter her employment status. Had she done so, before submitted her written request ..., she would have been fully advised by governing statues and regulations.

*Id.* at pp. 5–6. Because the district court so decided, it found Dr. Nataraj to be a part-time employee of the VA and, as such, not entitled to a hearing prior to termination.

■ In a letter to the court, plaintiff Balderman's attorney, John Galeziowski, argued that the *Nataraj* case is inapposite to the instant case (Item 17). However, because I find plaintiff's arguments are without merit, I now grant defendants' summary judgment motion, dismissing this portion of plaintiff's complaint.

Like the plaintiff in the *Nataraj* case, plaintiff Balderman himself requested the change from full to part-time employment, about which he now complains. At the time of this request, he was given clear notice by defendants that this change of status would have a significant impact on the terms of his employment. Although it is undisputed that plaintiff was not informed of every aspect of this change, I believe that the notice he received satisfied the requirements of VA Manual, MP–5, Chapter 2, ¶ 11(a). As in the *Nataraj* case, I find that, given the facts of this case, the burden was on plaintiff Balderman to fully investigate the ramifications of his request on his rights and benefits, including his job security and hearing rights, before making his decision to alter his employment status.

Given the above, I believe that, contrary to plaintiff's assertions, defendants did not improperly effect plaintiff's conversion from full to part-time in 1981. *Cf.*, Item 1, ¶¶ 26–30; *Nataraj v. United States, supra.*

*Administrative Procedure Act*

■ In the first cause of action in his complaint, plaintiff Balderman argues that defendant violated the requirements of 5 U.S.C. § 3501 *et seq.*, and 5 C.F.R. Part 351 by not establishing a "retention register and a 'tenure system'" at the Veterans Administration "to classify employees to determine retention rights when a reduction-in-force occurs." Item 1, ¶¶ 20–25. Plaintiff argues that he was discharged in violation of these rights.

Defendants disagree. They argue in their initial memorandum of law that the procedures which apply to Title 5 employees when reductions-in-force take place do not apply to the plaintiff here. They say that, in plaintiff's case, these procedures are preempted by 38 U.S.C. § 4119, which states:

Notwithstanding any other provision of law, no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with any provision of this subchapter shall be considered to supersede, override, or otherwise modify such provision of this subchapter except to the extent that such

provision of title 5 or of such other law specifically provides, by specific reference to a provision of this subchapter, for such provision to be superseded, overridden, or otherwise modified.

Moreover, defendants say that if Title 5 retention procedures were found to apply to some degree, 38 U.S.C. § 4108 clearly gives the Administrator of Veterans' Affairs the authority to determine conditions of employment as he has done in VA Manual, MP–5, Part II, Chapter 11, ¶ 5(a). Finally, they say that plaintiff has not been able to locate any authority which would in any way qualify or affect the clear language of 38 U.S.C. § 4110 or 4114(a)(1)(A).

I find defendants' logic persuasive here. Although I believe that the provisions of the Administrative Procedure Act are generally applicable in this case, where, as here, there are inconsistencies between the Administrative Procedure Act and the VA regulations,. the VA regulations must apply.

For this reason and also for the reasons stated below, I now dismiss the first cause of action in plaintiff's complaint.

*VA Retention Regulations*

■ In the third cause of action in plaintiff's complaint, he argues that he is entitled to notice, charges, and a fair hearing under 38 U.S.C. § 4110 on the ground that his dismissal was disciplinary. Item 1, ¶¶ 31–35. As was stated in the affidavit of Dr. Joseph Caruana (Item 4), no disciplinary actions were ever taken by the Veterans Administration against Dr. Balderman at any time during the time pertinent to this case. Moreover, even if this court were to find that the dismissal of Dr. Balderman was disciplinary in nature it has already been decided by this court that plaintiff is not entitled to a hearing because of his status as a part-time employee. *Balderman v. United States Veterans Administration*, 83 CIV–1451C (W.D.N.Y. June 29, 1984) [Available on WESTLAW, DCT database]. 38 U.S.C. §§ 4110(c), 4114(a)(1)(A). Dr. Caruana alleges in his affidavit that plaintiff was terminated "because there was an excess of surgeons on the Cardiothoracic Section of the [Surgical]

Service and not as a disciplinary action." Item 4, ¶ 2. Dr. Caruana stated that:

Dr. Balderman was the most junior of the parttime surgeons on the Cardiothoracic Section at that time and therefore his position was eliminated. There were two surgeons who were hired after Dr. Balderman and were more junior than he, but each of these individuals was full time with the Veterans Administration Medical Center.

*Id.*, ¶ 3.

■ I believe that Dr. Caruana's statements, uncontradicted in the record, warrant the dismissal of plaintiff's third cause of action at this time. VA Manual MP–5, Part II, Chapter 11, ¶ 5, clearly states that "retention principles contained in sections 3501 through 3504, title 5, U.S.C., will apply" insofar as they are consistent with the language of paragraph 5.

Paragraph 5 requires that, after an employer determines what "general and special skills" are required to effectively maintain continuity of patient treatment, as well as the "treatment areas" in which a reduction in staff would be most consistent with this goal, he or she must:

(3) Decide which persons will be retained and which will be reported as excess to local management needs, using as a basis the determinations [described above]. Whenever the qualifications of all individuals involved are otherwise generally equal, retention will be determined in the following order:

(a) Preference will be given to veterans;
. . . .
(b) As a second group, nonveterans will be ranked on the basis of creditable Federal service.

In addition, the provisions of 5 U.S.C. §§ 3501–04, mentioned above, require, *inter alia,* that the Office of Personnel Management prescribe regulations for the release of competing employees in the event of a reduction in force. The regulations which are pertinent to the instant case are collected at 5 C.F.R. Part 351, *et seq.; see especially* Subpart D, entitled "Scope of Competition." These regulations make clear that each agency like the defendants Veterans Administration must establish "competitive areas" (5 C.F.R. § 351.402) as well as "competitive levels" within each area (5 C.F.R. § 331.403) which are to be used in determining a given employee's retention rights. 5 C.F.R. § 351.-403(b)(4) notes that:

Separate levels shall be established for positions filled on a full-time, part-time, intermittent, seasonal, or on-call basis. No distinction may be made among employees in the competitive level on the basis of the numbers of hours or weeks scheduled to be worked.

Given the above, it is clear that, although plaintiff Balderman did have more "seniority" than the two full-time physicians who were retained when plaintiff's employment was terminated by defendants, this fact is irrelevant because Dr. Balderman was at a different "competitive level" than these doctors because he was a part-time employee. Accordingly, under both the VA regulations and the provisions of the Administrative Procedure Act, plaintiff's termination was lawful. Plaintiff's third cause of action is dismissed.

*Due Process*

■ Finally, plaintiff Balderman argues that, because he had a legitimate expectation of continued employment, this court should find that he was entitled to a hearing prior to his termination. Item 1, ¶¶ 36–39. This argument is based on plaintiff's claim that, even if he were considered a part-time employee for purposes of this case, his personnel records place him in tenure group 1, which is a "permanent" position. Accordingly, plaintiff says that other employees in tenure group II should have been terminated prior to him and that he should have been provided a hearing to determine his rights. I find this argument without merit. As defendants point out in their papers, plaintiff cannot point to any authority for the position that, as a member of tenure group I, he has a legitimate expectation of continued employment despite his part-time status. Therefore, plaintiff's fourth cause of action is dismissed.

In summary, defendants' motion is granted in all respects. Plaintiff's complaint is dismissed. The Clerk is directed to enter judgment for defendants. The parties are directed to meet with the court on September 9, 1987, at 9 a.m. to discuss the remaining pending action, *Balderman v. Harry Walters*, CIV–86–433C.

So ordered.