Samuel C. BALDERMAN, M.D., Plaintiff–Appellant,

v.

UNITED STATES VETERANS ADMINISTRATION and Veterans Administration Medical Center, Defendants–Appellees.

No. 735, Docket 87–6256.

United States Court of Appeals, Second Circuit.

Argued Feb. 18, 1988.

Decided March 10, 1989.

John A. Galeziowski, Buffalo, N.Y., for plaintiff-appellant.

Martin J. Littlefield, Asst. U.S. Atty., Buffalo, N.Y. (Roger P. Williams, U.S. Atty., W.D.N.Y., on the brief), for defendants-appellees.

Before TIMBERS, KEARSE, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Samuel C. Balderman, M.D., appeals from a final judgment of the United States District Court for the Western District of New York, John T. Curtin, then-*Chief Judge*, dismissing his complaint against defendants Veterans Administration Medical Center in Buffalo, New York ("Medical Center"), and the United States Veterans Administration (collectively the "VA"), seeking redress for the termination of his employment as a surgeon on the staff of the Medical Center. The district court granted the VA's motion for summary judgment dismissing the complaint on the ground that Balderman was a part-time employee of the Medical Center and hence had no tenure and no right to a pretermination hearing. Balderman, formerly a full-time surgeon on the staff of the Medical Center, contends principally that this ruling was erroneous because his conversion to part-time status was invalid on account of the VA's failure to forewarn him that he would thereby lose these rights. For the reasons below, we affirm the dismissal of Balderman's claim that his termination was a disciplinary action requiring a pretermination hearing, but we conclude that summary judgment should not have been granted dismissing the claim with respect to his tenure rights, and we remand to the district court for further proceedings on the latter claim.

## I. BACKGROUND

Balderman became a full-time member of the cardiothoracic section of the surgical staff at the Medical Center in 1978 and acquired permanent status, or tenure, in 1980. He was also affiliated with the Department of Surgery in the School of Medi-

cine at the State University of New York at Buffalo. In 1981, Balderman decided to increase his involvement with the School of Medicine, and he requested that his appointment at the Medical Center be reduced to seven-eighths of full time.

### A. *The Conversion to Part–Time and the Ensuing Events*

The VA's operations manual provided that: "Conversions to another appointment ... giving the employee less rights and benefits may not be effected until he has been advised in writing of the conditions of employment under the new appointment; and has submitted a written resignation or other written evidence clearly indicating voluntary [separation] from his previous employment." VA Manual MP–5, Part II, Chapter 2, ¶ 11(a) (Jan. 22, 1974) ("VA Manual") (brackets and punctuation in original). In a memorandum dated June 26, 1981 ("1981 VA Memorandum"), the VA explained to Balderman that his conversion to part-time status would require him to relinquish his full-time appointment and would result in changes in pay, life insurance benefits, leave accrual rates, and retirement benefits. No other changes were mentioned. The foot of the 1981 VA Memorandum bore the printed legend, "I DO/DO NOT UNDERSTAND ALL OF THE CONDITIONS, INCLUDING LOSS OF BENEFITS OF CONVERTING TO PART–TIME EMPLOYMENT." Balderman crossed out "DO NOT" and signed the memorandum. His conversion to part-time (⅞) status was approved in June 1981 pursuant to 38 U.S.C. § 4114(a) (Supp. IV 1986).

After Balderman's change to part-time status, the Medical Center hired two new full-time cardiothoracic surgeons, one in 1982 and one in 1983. The VA expressed no dissatisfaction with Balderman, however, and when he expressed concern as to the need for the 1983 hiring, his supervisor told him that it would not affect Balderman's status. Nonetheless, the VA soon decided to reduce Balderman's position from seven-eighths to one-half time because of a surplus of full-time staff. Balderman challenged that decision in an action

in the district court in January 1984, contending that he was entitled to a hearing prior to this change in his part-time status. The suit was summarily dismissed by the district court on the ground that under 38 U.S.C. §§ 4110(a) and 4114(a)(1)(A), a part-time employee of the VA is not entitled to notice and a hearing prior to such a reduction. *See Balderman v. United States Veterans Administration*, 83 Civ. 1451C (W.D.N.Y. June 29, 1984) [1984 WL 6584] (*Balderman I*), aff'd mem., No. 84–6266 (2d Cir. Dec. 31, 1984).

In the summer of 1984, the Medical Center's chief of surgery determined that a reduction of staff in the cardiothoracic section was necessary and that Balderman, as the more junior of the two part-time surgeons in that section, should be terminated. The termination of his employment became effective in August 1984.

### B. *The Present Action*

Balderman commenced the present action in 1985, alleging principally that the termination violated his tenure rights, which he claimed to retain on the ground that his conversion from full-time to part-time status had not been effective due to the VA's failure to comply with the pertinent VA regulations requiring it to inform him that the change in his status would result in a loss of tenure rights. He also contended that his termination constituted disciplinary action as to which a pretermination hearing was required.

The VA moved for summary judgment dismissing the complaint principally on the grounds (1) that the decision in *Balderman I* constituted res judicata or collateral estoppel, and (2) that the VA had adequately informed Balderman of the changes in employment conditions to result from his conversion to part-time status, and hence Balderman retained no tenure or hearing rights after that conversion. Balderman opposed the VA motion and cross-moved for summary judgment in his favor. He submitted his affidavit stating, "I was not informed either orally or in writing that my acceptance of the conversion would result in any

loss of seniority, job security, or job permanency." He stated, "If I had known that a conversion to part-time would result in loss of job security and retention status, ... I would definitely not have requested or accepted the conversion." The VA did not controvert the assertion that it had not advised Balderman that he would lose tenure and hearing rights upon conversion. Rather, it pointed out that the VA Manual "does not stipulate exactly what must be contained in the written advisement to the employee," and it argued that the information given Balderman in the 1981 VA Memorandum "suffice[d]."

In an opinion published at 666 F.Supp. 461 (1987), the district court granted the motion to dismiss. Though it rejected the contention that the suit was barred by res judicata or collateral estoppel, it concluded that the information given to Balderman prior to his conversion sufficed. Relying on *Nataraj v. United States*, Civ. No. 85–5120 (D.N.J. Nov. 15, 1985), the court concluded that the VA "did not improperly effect plaintiff's conversion from full to part-time in 1981." 666 F.Supp. at 465. With respect to Balderman's claim that a pretermination hearing was required because his termination was a disciplinary action, the court rejected Balderman's premise, noting his failure to controvert the affidavit of the VA chief of surgery stating that the cardiothoracic section was overstaffed.

Judgment was entered dismissing the complaint, and this appeal followed.

## II. DISCUSSION

On appeal, Balderman contends that the district court erred in granting summary judgment against him and should instead have granted summary judgment in his favor. Though we reject the latter contention summarily, and though we conclude that the dismissal of Balderman's claim for a pretermination disciplinary hearing was proper substantially for the reasons stated in the district court's opinion, we find merit in the contention that there were genuine issues of material fact that foreclosed the summary dismissal of Balderman's claim

that he had not been properly deprived of tenure.

### A. *Material Issues of Fact as to the Tenure Claim*

The general principles governing motions for summary judgment are well established. Such a motion may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See* Fed.R. Civ.P. 56(c). On a motion for summary judgment, the court is not to resolve issues of fact but only to determine whether there are issues to be tried. *E.g., Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 58 (2d Cir.1987); *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975). In assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought. *See, e.g., Ramseur v. Chase Manhattan Bank*, 865 F.2d at 465; *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d at 57; *Schwabenbauer v. Board of Education*, 667 F.2d 305, 313 (2d Cir.1981). Further, "[w]e have repeatedly noted that 'summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated.'" *Ramseur v. Chase Manhattan Bank*, 865 F.2d at 465 (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed. 2d 74 (1985)); *see Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984) (citing cases). These principles were not properly applied to Balderman's tenure claim.

In the present case, there was no indication that, had Balderman not converted to part-time status, he would have lost his tenure; nor was there any suggestion that his conversion was in any way com-

pelled. Indeed, the VA Manual established procedures apparently aimed at ensuring and at "clearly indicating" that any such conversion would be "voluntary." Thus, the material issue was whether Balderman's conversion, and the purported waiver of his tenure rights, was voluntary.

The issue of voluntariness is a mixed question of law and fact, and the record before the district court in no way suggested that Balderman could be found to have waived tenure voluntarily as a matter of law. Though Balderman signed the 1981 VA Memorandum that stated that he "UNDERST[OO]D ALL OF THE CONDITIONS, INCLUDING LOSS OF BENEFITS OF CONVERTING TO PART–TIME EMPLOYMENT," this acknowledgement, taken in the context of the document as a whole and in the context of a motion by the VA for summary judgment, cannot properly be construed as a concession that he had been advised as to loss of tenure or that he waived his tenure rights voluntarily. This legend appeared on a document, prepared by the VA, whose text stated, *inter alia*, "[o]ur procedures require that you be [pre]advised in writing of the conditions of employment" in a part-time position. Loss of tenure or job security was not among the conditions mentioned in the memorandum. It would be counterintuitive to infer as a matter of fact that the endorsement was intended by Balderman to mean that he understood conditions that were not even explained to him. And it is surely impermissible to draw such an inference as a matter of law. Whatever the VA may have intended this endorsement to encompass, the document must be construed against the VA as the drafter on its motion for summary judgment.

This does not mean, of course, that Balderman's conversion was as a matter of law *in*voluntary. Resolution of the question of whether it was voluntary or not will depend on an assessment of whether the nondisclosure of the effect of conversion on tenure was material, *i.e.*, whether in fact Balderman would have elected to remain a full-time staff member had he known conversion would require him to give up his tenure. In opposition to the VA's motion

for summary judgment, Balderman's affidavit in the district court stated, "If I had known that a conversion to part-time would result in loss of job security and retention status, ... I would definitely not have requested or accepted the conversion." The finder of fact surely would be permitted to credit such testimony, especially in light of the fact that Balderman sought only a small reduction, *i.e.*, to (⅞) of full time; thus, he proposed to continue working at the Medical Center 35 hours a week. An inference that Balderman would have pursued a reduction of his 40–hour work week by five hours had he known he would thereby lose tenure is not an inference that may properly be drawn as a matter of law.

We note that the only case relied on by the district court in dismissing Balderman's tenure claim as a matter of law was *Nataraj v. United States*, Civ. No. 85–5120 (D.N.J. Nov. 15, 1985). In *Nataraj*, the court had dismissed a claim challenging a similar change from full-time to part-time status, finding that the physician must have known she would thereby lose her tenure. Reliance on *Nataraj* in the present case was misplaced, however, because *Nataraj* was not decided on summary judgment but rather was decided after a "consolidated hearing," following which "[t]he Court ma[de] ... determinations of fact." *Id.* at 2. Thus, whatever inferences the *Nataraj* court drew, it drew as the finder of fact after a trial.

For the foregoing reasons, we conclude that the entry of summary judgment dismissing Balderman's tenure claim was error.

## B. *The Estoppel Theories*

Finally, we note our rejection of various estoppel theories advanced in support of the dismissal of the tenure claim: (1) defendants' contention that the claim is barred by the judgment in *Balderman I* under principles of res judicata or collateral estoppel, and (2) the dissent's theory that the tenure claim is dismissable as a matter of law because it is based on a claim of estoppel against the government. We find none of these contentions persuasive.

■ Res judicata, or claim preclusion, prevents the subsequent litigation of any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 727 (2d Cir.1981); Restatement (Second) of Judgments § 24 (1982). This principle does not bar Balderman's claim that the termination of his employment violated his tenure rights because, as the district court found, at the time of *Balderman I* his employment had not been terminated. Thus, the present claim could not have been litigated in *Balderman I.*

■ Collateral estoppel, or issue preclusion, prevents the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action. *Lawlor v. National Screen Service,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *Commissioner v. Sunnen,* 333 U.S. at 598, 68 S.Ct. at 719; *Tucker v. Arthur Andersen & Co.,* 646 F.2d at 728; Restatement (Second) of Judgments § 27 (1982). This principle does not apply to Balderman's tenure claim because, as the VA concedes, "the specific question of whether plaintiff's conversion was properly effectuated was not litigated in the first suit." (VA Memorandum of Law in support of its motion to dismiss the complaint.)

Accordingly, we conclude that the district court properly rejected defendants' contention that the present suit was barred by res judicata or collateral estoppel.

Lastly, we disagree with the theory introduced by the dissent, referring to *Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), and *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam), that Balderman's tenure claim is barred because there can be no estoppel against the government. A plaintiff is entitled to seek relief on alternative theories of liability, Fed.R.Civ.P. 8(e)(2); *see* 2A *Moore's Federal Practice* ¶¶ 8.14, at 8–90;

8.31[2], at 8–222 (2d ed. 1987), and we have held it plain error for the trial court to fail to make adequate presentation to the jury of the plaintiff's alternative theories. *See, e.g., Schaafsma v. Morin Vermont Corp.,* 802 F.2d 629, 635–36 (2d Cir.1986). Consistent with these general principles, the Supreme Court has made it clear that not every case in which the government has failed to provide a claimant with material information must be decided as if it depended solely on a theory that the government is estopped. *See, e.g., Moser v. United States,* 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951); *see also Patton v. Dole,* 806 F.2d 24, 30 (2d Cir.1986). The Supreme Court's decision in *Moser,* which "expressly rejected any doctrine of estoppel, and rested on the absence of a knowing and intentional waiver" by the petitioner, *Heckler v. Community Health Services,* 467 U.S. at 68, 104 S.Ct. at 2228 (Rehnquist, *J.,* concurring), is most instructive.

*Moser,* a Swiss citizen, had applied for an exemption from service in the United States armed forces on the ground of his citizenship. At that time, a federal statute provided that a person who made such an application would thereafter be debarred from becoming a United States citizen. Though the Selective Service System application form in use when Moser began his efforts required applicants to acknowledge this bar, negotiations between the Swiss Legation in Washington and the United States State Department led to a revision of the form to delete that acknowledgement, and Moser signed the revised form. The district court found, and the court of appeals and the Supreme Court accepted, that Moser had "signed the application for exemption believing that he was not thereby precluded from citizenship, and that had he known claiming exemption would debar him from citizenship, he would not have claimed it, but would have elected to serve in the armed forces." 341 U.S. at 45, 71 S.Ct. at 555. Although the court of appeals ruled that Moser's claim of the exemption barred him from gaining citizenship, the Supreme Court reversed. While the Supreme Court noted that Moser "had sought information and guidance from the

highest authority to which he could turn, [that he] was advised to sign [the revised application form]," and that he "was led to believe that he would not thereby lose his rights to citizenship," *id.* at 46, 71 S.Ct. at 556, it analyzed the case as one turning on whether Moser had waived his rights, not on whether the government was to be estopped. It noted that "[s]ince the [r]evised [application form] contained no waiver, what he signed was entirely consistent with what he believed and claimed," and it found that

> [p]etitioner did not knowingly and intentionally waive his rights to citizenship. In fact, because of the misleading circumstances of this case, he never had an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law.

*Id.* at 47, 71 S.Ct. at 556. Finding that Moser had not intentionally waived his rights, the Court stated that "[t]here is no need to evaluate these circumstances on the basis of any estoppel of the Government...." *Id.*

## CONCLUSION

The judgment of the district court is vacated to the extent that it dismissed so much of Balderman's complaint as depended on his claim that he had not lost tenure, and the matter is remanded for further proceedings not inconsistent with the foregoing. In all other respects the judgment of the district court is affirmed.

MAHONEY, Circuit Judge, concurring in part and dissenting in part:

I join the majority in its affirmance of the dismissal of Balderman's claim that his termination was a disciplinary action requiring a pretermination hearing, but respectfully dissent from its reversal of the dismissal of his claim with respect to tenure rights.

My difference with the majority pertains to the substantive law applicable to Balderman's claim of tenure rights. As the Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), for purposes of summary judgment, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510; *see Kronfeld v. Trans World Airlines,* 832 F.2d 726, 731 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1470, 99 L.Ed.2d 700 (1988).

Balderman claims that his conversion to part-time status was "never effected," complaint ¶ 18, or "never properly effected," *id.* ¶ 19, as a result of which Balderman "retained the rights of a full-time physician," *id.* ¶ 28, including tenure rights. The defect in the conversion is asserted to be the government's failure to advise Balderman "in writing of the [tenure] conditions of employment under the new appointment," as required by the VA Manual.

Balderman is claiming, in other words, that because of its failure to comply with the VA Manual, the government is estopped from treating him as a part-time physician, but must rather deem him a full-time physician, for tenure purposes. In my view, authoritative Supreme Court precedent precludes the assertion of this estoppel claim against the government, and there is accordingly "no genuine issue as to any material fact" requiring remand. *See* Fed.R.Civ.P. 56(c).

Preliminarily, I recognize that the case was not decided on this basis below. It is, however, "settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); *see Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987); *United States v. Lieberman,* 637 F.2d 95, 103 n. 11 (2d Cir.1980).

Turning to the merits, the most pertinent authority is *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam). There, as here, a government manual, the Social Security Administration Claims Manual, required certain action by a government agent which was not

undertaken.[1] Specifically, that manual "instruct[ed] field representatives to advise applicants of the advantages of filing written applications and to recommend to applicants who are uncertain about their eligibility that they file written applications." *Id.* at 786, 101 S.Ct. at 1470. A government field representative nonetheless erroneously told an applicant that she was not eligible for certain benefits, and neglected to advise her to file a written application or apprise her of the advantages of doing so. The applicant thereafter filed for the benefits, but in accordance with the applicable regulations, received retroactive benefits only for the twelve months preceding the filing.

The applicant then sued to collect benefits retroactive to twelve months prior to her receipt of the erroneous advice from the government representative. The Supreme Court rejected her claim, stating, and answering in the negative, the following question:

> The question is whether [the SSA representative's] erroneous statement and neglect of the Claims Manual estop petitioner, the Secretary of Health and Human Services, from denying retroactive benefits to respondent for a period in which she was eligible for benefits but had not filed a written application.

*Id.*

In so ruling, the Court reversed a contrary decision by this court, *see Hansen v. Harris,* 619 F.2d 942 (2d Cir.1980), *rev'd sub nom. Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), specifically agreeing, 450 U.S. at 788, 101 S.Ct. at 1472, with the dissent of Judge Friendly therein, *see Hansen v. Harris,* 619 F.2d at 949 (Friendly, J., dissenting). The Court concluded that the government representative's errors fell far short of the misconduct which would raise a serious question of estoppel. *Schweiker v. Hansen,* 450 U.S. at 790, 101 S.Ct. at 1472.

I regard the rule stated in *Schweiker v. Hansen* as controlling here. It is true that Balderman, unlike the applicant in *Schweiker v. Hansen,* is in a contractual relationship with the government. It has long been settled, however, that the rule against estoppel of the government is applicable to such relationships. In *Federal Crop Ins. Co. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), the government, acting as insurer, was held not to be estopped from denying coverage under the insurance contract, despite its agent's affirmative misrepresentation to the insured that the insurance contract covered the situation for which recovery was unavailingly sought.

Nor has the authority of *Federal Crop Ins. Co. v. Merrill* and *Schweiker v. Hansen* eroded since those cases were decided.[2] The Supreme Court more recently considered this issue in *Heckler v. Community Health Servs.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), where it reiterated that:

> When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.

*Id.* at 60, 104 S.Ct. at 2224. The Court reserved only the question whether, in an exceptional case, the "interest of citizens in some minimum standard of decency, honor and reliability in their dealings with their Government" might allow an estoppel to be successfully asserted against the govern-

---

**1.** *Schweiker* is particularly apposite to the instant case in this respect. Although the Supreme Court in *Schweiker* specified that it had "no doubt" about the government representative's failure to comply with the pertinent government manual, 450 U.S. at 789, 101 S.Ct. at 1471, the Court refused to allow an estoppel against the government, stating: "the Claims Manual is not a regulation. It has no legal force, and it does not bind the SSA." *Id.; see*

*Lyng v. Payne,* 476 U.S. 926, 937, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986) ("not all agency publications are of binding force") (citing *Schweiker* ).

**2.** We recently followed *Schweiker v. Hansen,* albeit reluctantly, in *Scime v. Bowen,* 822 F.2d 7 (2d Cir.1987).

ment. *Id.* at 60–61, 104 S.Ct. at 2224–2225; *see Lyng v. Payne,* 476 U.S. 926, 935, 106 S.Ct. 2333, 2339, 90 L.Ed.2d 921 (1986) (also reserving question). It cannot plausibly be contended that the instant case poses that issue.

Finally, as I suppose is evident, I am unpersuaded by the majority's discussion of this issue. The majority cites *Moser v. United States,* 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951), and *Patton v. Dole,* 806 F.2d 24, 30 (2d Cir.1986), for the proposition that "not every case in which the government has failed to provide a claimant with material information must be decided as if it depended solely on a theory that the government is estopped." Be that as it may, neither *Moser* nor *Patton* provides any basis to disregard estoppel analysis on the facts presented here, or to reject the authority of *Schweiker* and *Merrill.*

*Patton* involved a question of statutory construction, in which the court perceived the "claim as one for breach of a statutorily prescribed contractual provision," 805 F.2d at 30, and "ma[de] clear that our holding is not intended to broaden the limited circumstances under which the federal government may be estopped by the conduct of its employees," *id.* I am simply at a loss as to what authority *Patton* provides for disregarding the application of *Schweiker* and *Merrill* here.

The facts and rationale of *Moser* are amply stated in the majority opinion. There is precedent for the attempted invocation of *Moser* to avoid the application of *Merrill,* and it would be pure vainglory for me to attempt any improvement upon Judge Friendly's response to that effort:

> In the thirty two years since *Merrill,* no Supreme Court decision has gone counter to what that case has held. While some courts and commentators have sought to find a contrary indication in *Moser v. United States,* 341 U.S. 41, 47, 71 S.Ct. 553, 556, 95 L.Ed. 729 (1951), *this is an instance of the wish being father to the thought.* The four survivors of the *Merrill* majority joined in *Moser;* decision was placed on the ground that a claim to citizenship could be relinquished only be [sic] intelligent waiver, which Moser had

not done; *Merrill* was not cited; and the opinion expressly said, "There is no need to evaluate these circumstances on the basis of any estoppel of the Government or the power of the Swiss Legation to bind the United States by its advice to petitioner."

*Hansen v. Harris,* 619 F.2d at 950 (Friendly, J., dissenting) (emphasis added).

I suggest that the suspect generative process which Judge Friendly discerned in *Hansen v. Harris* is replicated in the majority's invocation of *Moser* here. The Supreme Court's most recent citation of *Moser* indicates either that it might be a precedent for the invocation of estoppel in the (still reserved) exceptional case of extreme affirmative misconduct by the government, *Heckler v. Community Health Servs.,* 467 U.S. at 60 n. 12, 104 S.Ct. at 2224 n. 12, or that it simply has no application to a case where the question of estoppel properly arises on the facts presented, *id.* at 68, 104 S.Ct. at 2228 (Rehnquist, J., concurring in the judgment). Neither view of *Moser* does anything for Balderman's tenure claim.

For the reasons above stated, I join the majority in its affirmance of the dismissal of Balderman's claim that his termination was a disciplinary action requiring a pretermination hearing, but respectfully dissent from its reversal of the dismissal of his claim with respect to tenure rights.