**Darryl OVERBY, Plaintiffs,**

v.

**CHASE MANHATTAN BANK & J.P. MORGAN CHASE, Defendant.**

No. 03 CIV.1370(CM).

United States District Court, S.D. New York.

Jan. 3, 2005.

Darryl A. Overby, Peekskil, NY, pro se.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge

Defendants, Chase Manhattan Bank and J.P. Morgan Chase ("Chase"), have moved for summary judgment against plaintiff, Darryl Overby, pro se, pursuant to Fed. R.Civ.P. 56(b). Plaintiff is suing Chase (1) for ten million dollars arising from alleged "negligence, racial prejudice, racial discrimination, .and mental duress," and (2) for reinstatement of a one million dollar life insurance policy. For the following reasons, defendants' motion for summary judgment is GRANTED in its entirety.

### I. Facts

Plaintiff, an African American, became a customer of Chase in September 2000. Def. Exh. J–1. Plaintiff was simply seeking to open "a regular bank account ... to have [his] money deposited." Plaintiff's Deposition ("Pl.Dep.") at 131. When plaintiff opened the accounts he did not ask for advice regarding which type of account would suit him best, and he did not inquire about any investment options. *Id.* at 99. Plaintiff opened both a banking accounts and a CD account. *Id.* at 27, 131. Plaintiff was never told that he could not invest or start a mutual fund. *Id.* at 125.

### A. Treatment

No one at any Chase branch ever made a remark to plaintiff about his race. Pl. Dep. at 83. Plaintiff never complained to anyone at the bank that he felt discriminated against. *Id.* at 84. Plaintiff testified that the customer service representative who he spoke to about possible fraud and unauthorized transfers, Donna Fayne, did not discriminate against him. Pl. Dep. 88.

On December 19, 2000, plaintiff attempted to deposit a check at the Ossening, New York branch, and was asked for identification by the bank teller. *Id.* The check was in the amount of $19,000, and was accepted and deposited by the teller at Chase. *Id.* at 8–9. Plaintiff does not recall the names of the teller that he dealt with that day. *Id.* at 11.

### B. Claims of Unauthorized transactions

#### 1. The Agreement

The terms of the accounts that Plaintiff opened are laid out in the "Deposit Account Agreements and Disclosures" issued by Chase. *See* Def. Exh. A.

"Upon receipt of your monthly or periodic statements ... *you shall exercise reasonable care* and promptness *in examining the Statement* or advice. You shall *notify the bank in writing within (30) calendar days* of the mailing of the

Statement or advice, or from the time [it] is made available to you, *of any errors, discrepancies, or irregularities,* including but not limited to . . . unauthorized transfers or withdrawal of funds by wire or otherwise. . . . . [Y]ou shall notify the Bank, *in writing within six months* of the mailing of the Statement or advice, or from the time [it] is made available to you, that *any endorsement was unauthorized, improper, or missing* on any Item drawn on your account, that any item payable to you was improperly negotiated by the Bank, or that any deposit was not properly credited to your account. The Bank *will not be responsible* for any loss suffered by you *if you do not notify the Bank* in writing within these stated time periods."

Def. Ex. A at 11 (emphasis added).

**Tell us AT ONCE if you believe any of your Cards and/or Secret Code have been lost or stolen or that an unauthorized transfer has been made from any of the Accounts.**

.     .     .     .     .

If you do not do so, you could lose all the money in each of the Accounts, as well as all of the available funds in your Overdraft Line of credit account . . . ."

*Id.* at 14 (emphasis in original).

**"In Case of Errors or Questions About Electronic Transfers** Call or write customer service as soon as you can if you think or statement or transfer record is incorrect, or if you need more information. We must hear from you *no longer than 60 days* after we sent you the FIRST statement on which the problem or error appeared."

*Id.* at 16 (italics added).

### 2. Unauthorized Transactions Claims

At some point in 2000, Plaintiff sensed that funds were being deducted from his bank account that he could not account for. He believed that the balance was lower than it should have been. *See* Pl. Dep. at 62.

Plaintiff reported this alleged discrepancy to the Peekskill, New York Chase branch. Plaintiff received a form to fill out and send to the Fraud Unit of Chase Manhattan. Plaintiff claims to have filled the form out "as soon as possible," but was later told that it was never received. Pl. Dep. at 64–65. Plaintiff has no record of the mailing nor a copy of the form he sent. *Id.* at 66.

Plaintiff admitted that he never reviewed his bank statements until the day of his deposition. Pl. Dep. at 49. Therefore, he was not contesting any particular charges or debits, but rather simply that "the balance don't come back right." *Id.* at 62. Specifically, he was surprised by how quickly it diminished from $18,000 down to $6,000. Pl. Dep. at 70. Plaintiff also does not recall the specific charges or amounts that he was disputing at the time. *Id.* at 25.

### 3. Direct Withdrawals

On September 6, 2001, plaintiff received a letter from e-Phone Telecom Inc. thanking him for enrolling in an unlimited long distance calling plan. *Id.* The letter stated that each month, $49.95 plus a $4.95 service fee would be automatically deducted from his credit card or checking account and that the "rate are subject to change without notice." *See* Exhibit attached to Complaint. Plaintiff testified that he did not request this service and called to cancel it. Pl. Dep. at 40–41.

Plaintiff also was the insured on a life insurance policy issued by J.C. Penny Life Insurance Company to The Chase Manhattan Bank which he purchased at some later date from the bank. *See* Exhibit attached to Complaint. His monthly pay-

ments were set up for direct withdrawal. Pl. Dep. at 93.

#### 4. Further Unauthorized Transaction Claim

There is a record of plaintiff's contesting the validity of a 2001 ATM transaction in the amount of $279.89 by letter. Pl. Dep. at 63–64. An October 3, 2001 response letter from Chase supplied plaintiff with an Affidavit of Unauthorized Electronic Funds Transfers and Point of Sale Transactions Form with which to formally contest this transaction. *See* exhibit attached to Complaint. The letter instructed plaintiff to provide the requested information and return it to any neighborhood bank branch or mail it to ATM Compliance. *Id.*

Plaintiff subsequently received an October 12, 2001 letter from ATM Compliance which informed him that they "cannot honor your request for reimbursement of unauthorized ATM transactions charged to your account [because] information found during our investigation of your request does not support a conclusion that there was an error." *See* exhibit attached to Complaint. The letter included another affidavit of unauthorized use and informed plaintiff that the bank would reopen the investigation if he had additional information to provide. It also notified him that he had "the right to request any documentation the bank used in making this determination." *Id.* Plaintiff took no further action except to file this law suit.

Other than the two fraud forms, plaintiff never wrote to Chase regarding any discrepancies. Pl. Dep. at 26, 65. Plaintiff also admits that he did not balance his checkbook and never analyzed the bank statements to ensure that debits and credits were accurate. *Id.* at 26–27. Plaintiff therefore can not state the amount of money that he alleges was transferred out of his account without his authorization. *Id.* at 62.

On or about December 2, 2002, a preauthorized check in the amount of $224.34, and paid to the order of "Progressive Inc./Progressive Ins/Ins Prem," JP Morgan Chase, and William Lee was faxed to the Peekskill branch. *See* Pl. Dep. at 76–78. The check came from a Citibank account. *See* Exhibit attached to Complaint. There is no evidence that this check was either drawn from plaintiff's account or that it appears as a deduction on any of his bank statements. *See* Pl. Dep. at 76–78.

On January 21, 2003, plaintiff received a letter from USA Credit responding to a complaint plaintiff made regarding an unauthorized charge or debit to his credit card or checking account by USA Credit. *See* Def. Aff. Exh. G. The letter instructed plaintiff to complete an enclosed Unauthorized Purchase/Debit Affidavit Form. *Id.* There is nothing on the record to indicate that plaintiff ever followed up in this regard.

Plaintiff was aware when he opened up the accounts at Chase that there were fees associated with his account, but never realized "that it would be so expensive just to bank there." Pl. Dep. at 90–91.

### II. Procedural History

This case was filed by plaintiff on February 27, 2003. Chase answered the complaint on December 16, 2003. Discovery was scheduled to conclude on August 27, 2004, pursuant to the Case Management Plan, however, plaintiff was not deposed until September 30, 2004, at which date discovery concluded pursuant to Magistrate Judge Yanthis' order. This motion for summary judgment was filed by Chase on October 29, 2004. The motion was served on plaintiff by overnight mail for delivery on Monday, November 1, 2004. The motion was accompanied by a Rule

56.2 Notice, telling plaintiff what he needed to do in response. As per the Court's rules, "Answering papers or motions are to be served two (2) weeks after receipt of the moving papers." Therefore, plaintiff's answering papers were to be filed and served by November 15, 2004.[1] I held a conference on December 3, 2004, which the plaintiff appeared at telephonically. Plaintiff was given a two week extension to submit his papers, and a final deadline for submission was set for December 17, 2004. Plaintiff submitted a response on December 16, 2004.

## III. Legal Standards

A party is entitled to summary judgment when there is no "genuine issue of material fact," and the undisputed facts warrant judgment for the moving party as a matter of law. FED. R. CIV. P. 56(C); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("*Anderson II*"). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The party opposing summary judgment

"may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson II*, 477 U.S. at 248, 106 S.Ct. 2505.

A nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993). In short, a nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. The Motion For Summary Judgment Is Granted

Plaintiff's claims against Chase are for negligence, racial prejudice, racial discrimination, metal duress, and wrongful cancellation of plaintiff's insurance policy.

### A. Racial Prejudice and Racial Discrimination (42 U.S.C. § 1981)

■ Plaintiff stated at his deposition that the basis of his claim for racial prejudice is that he believed the bank failed to voluntarily suggest investment options when he opened up his bank account because he is an African American. Pl. Dep. at 128. Plaintiff's claims of racial prejudice and racial discrimination are one and the same. *See* Pl. Dep. at 126.

---

1. A copy of the Court's rules was provided at the initial Rule 16 conference on May 7, 2004.

Section 1981 protects against non-governmental discrimination by providing in pertinent part, that:

All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts, ... and to the full and equal benefit of all laws ... as is enjoyed by white citizens ...

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a) & (b) (" § 1981").

■ To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts). *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993); *Joseph v. New York Yankees Partnership,* 00 Civ. 2275(SHS), 2000 WL 1559019, *2, 2000 U.S. Dist. LEXIS 15417, *6–7 (S.D.N.Y. 2000).

There is no evidence in the record to support an inference that Chase or any of its employees had an intent to discriminate against the defendant on the basis of his race. The crucial issue is whether the evidence is sufficient to show that Chase's failure to suggest investment options occurred under circumstances giving rise to an inference of discrimination. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101–102 (2d Cir.2001).

Here, the plaintiff provided no evidence that white customers who opened bank accounts were voluntarily offered invest-

ment options. Nor does plaintiff have any evidence that his race was the reason that such an option was not suggested to him. There is no evidence in the record that plaintiff was treated differently than any other Chase customers. Furthermore, neither the fact that plaintiff was asked for identification when depositing a $19,000 check nor his naked assertion—without any proof—that money was being "stolen" from his account provides evidence of discriminatory intent.

Because the evidence in the record does not support the second element of plaintiff's § 1981 claim—intent to discriminate—I need not go no further to GRANT summary judgment in favor of the defendants as to this claim.

### B. *Negligence and Mental Duress*

■ Plaintiff seeks to have this court exercise supplemental jurisdiction over his state law claims of negligence and intentional infliction of mental duress claims. Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a). This jurisdiction is not mandatory; supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right," and that district courts can decline to exercise jurisdiction over pendent claims for a number of reasons. *See City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27; 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Relevant here is the provision stating that "[t]he district courts may de-

cline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction. . . ." 28 U.S.C. § 1367(c). However, because I can dispose of this case in its entirety, I exercise my discretion in favor of entertaining—and dismissing—these claims.

■ Plaintiff states in his deposition that he is suing for negligence because "[Chase] never [afforded him] the opportunity to invest in mutual funds." Pl. Dep. at 124. However, plaintiff admits that no one at Chase ever told him that he could not invest or start a mutual fund. Pl. Dep. at 125. Plaintiff further states that when he opened his bank account at Chase, he "just wanted a regular bank account . . . to have [his] money deposited." Pl. Dep. at 131. The Court's attention has not been called to any duty that would have obligated Chase to offer plaintiff such as investment option.

Plaintiff's metal distress claims are also premised on a finding that the Chase discriminated against him because of his race. Because I find no evidence to support plaintiff's discrimination claim, there is likewise no basis for either of these claims. Therefore summary judgment should be GRANTED dismissing plaintiff's negligence and mental distress claims.

C. *Banking Claims*

It is not clear whether plaintiff intended to state a claim in his complaint regarding Chase's alleged failure to investigate the alleged "disappearance" of money from his account. Reading the pleading liberally, as I must when dealing with a pro se litigant, it is clear that this issue needs to be addressed as well. This court has jurisdiction over any action under the Electronic Funds Transfer Act, pursuant to 15 U.S.C. § 1693m(g).

According to the record, there is only one documented instance in which plaintiff submitted a written notification to Chase. Plaintiff contested the validity of a 2001 ATM transaction by letter. However, he then failed to pursue the matter further after an October 12, 2001 letter from ATM Compliance informed him that the information found during its investigation did not support a conclusion that there was an error.

Plaintiff could have provided Chase with additional information allowing it to reopen the investigation (*see* exhibit attached to Complaint). However, plaintiff took no further action until filing this suit. Under 15 U.S.C. § 1693m(g), this court only has jurisdiction over such claims if they are brought "within one year from the date of the occurrence of the violation." *Id.* Therefore, because this alleged violation occurred in October 2001, any claim had to be filed by October 2002. This action was not commenced until February 27, 2003 (*See* Cmplt.), and is therefore time barred.

■ There is no evidence that plaintiff properly submitted any other claims in writing to Chase as per the Deposit Account Agreements and Disclosures ("Agreement"). Under the agreement plaintiff was contractually obligated to notify the bank of these alleged errors or unauthorized transactions within either 30 or 60 days (depending on the nature of the error) after he received his account statement. *See* Def. Exh. A. Additionally, under the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"), plaintiff had a duty to notify Chase of any errors or unauthorized transactions within 60 days after receiving documentation of the electronic transfer. Because of plaintiff's failure to notify Chase within the required time period, he is now barred from asserting any of his banking claims. *See Qassemzadeh v. IBM Poughkeepsie Employ-*

**226**

*ees Fed. Credit Union,* 167 A.D.2d 378, 561 N.Y.S.2d 795, 796 (2d Dep't 1990); *Catalano v. Marine Midland Bank,* 303 A.D.2d 617, 618, 756 N.Y.S.2d 770 (2d Dep't 2003) (holding plaintiffs waived their right to bring action against the defendant bank by failing to notify the bank of the unauthorized withdrawals within 14 days after the account statements were made available to them, as required by the deposit account agreement). Furthermore, neither plaintiff's bald claims regarding transactions that he "is not sure about" (*see* Pl. Dep. at 23, 46) or that he has trouble remembering (*see id.* at 46), nor his surprise at how quickly the balance of his account had dissipated (Pl. Dep. at 70), is evidence of any erroneous or unauthorized transactions. Plaintiff has thus failed to raise a material issue of fact that is in dispute.

For the aforesaid reasons, summary judgment should GRANTED in favor of defendants on all banking claims.

D. *Reinstatement of Plaintiff's Insurance Policy*

Plaintiff in his deposition admitted that, while he sued Chase to have his life insurance policy reinstated, plaintiff actually has no evidence, nor any reason to believe, that it was ever cancelled. Pl. Dep. at 92–92. To the extent that plaintiff alleges cancellation on the basis of race, summary judgment is GRANTED because there is (1) no evidence of cancellation, and (2) no evidence of racism.

This constitutes the decision and order of the Court. The Clerk is directed to close the file.