143 F.3d 638
 The IRISH LESBIAN AND GAY ORGANIZATION, Plaintiff-Appellant,
v.
Rudolph W. GIULIANI, in his official capacity as Mayor of
the City of New York; William J. Bratton, in his official
capacity as Police Commissioner of the City of New York;
and City of New York, Defendants-Appellees,
New York County Board of the Ancient Order of Hibernians,
Defendant-Intervenor-Appellee.
 Docket No. 97-7064.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 19, 1997.
Decided April 23, 1998.
 
 Jacqueline C. Charlesworth, New York City (Jamie E. Shapiro, Gerard E. Harper, Hillary B. Smith, Paul, Weiss, Rifkind, Wharton & Garrison, of counsel), for Plaintiff-Appellant.
 Jane L. Gordon, New York City (Paul A. Crotty, Corporation Counsel, Barry P. Schwartz, of counsel), for Defendants-Appellees.
 (Ernest L. Mathews, Jr., New York City (Law Office of Thomas Gleason, of counsel)), for Defendant-Intervenor-Appellee.
 Before OAKES and WALKER, Circuit Judges, and REAL, District Judge.*
 Judge REAL concurs and dissents in a separate opinion.
 OAKES, Senior Circuit Judge:
 
 
 1
 The Irish Lesbian and Gay Organization ("ILGO") appeals from the judgment of the United States District Court for the Southern District of New York, John G. Koeltl, Judge, dismissing their suit against the City of New York, its Mayor, and its Police Commissioner (collectively, "the Defendants"). ILGO sued the Defendants under 42 U.S.C. § 1983 for violating ILGO's free speech and equal protection rights by denying ILGO a permit to hold a parade on 5th Avenue in advance of the 1996 annual St. Patrick's Day parade put on by the New York County Board of the Ancient Order of Hibernians ("AOH"). The District Court held that ILGO's facial challenge to New York City's parade-permitting ordinance was precluded by a decision in a similar suit brought by ILGO in 1995, and that ILGO's as-applied challenges to the permit denial were either moot or barred for lack of standing. We affirm in part and reverse in part.
 
 
 2
 This appeal presents the issue whether a judgment to deny a preliminary injunction and dismiss all remaining claims before discovery or a trial on the merits can have preclusive effect if a party attempts to raise the same claim against the same parties one year later. We find that the initial judgment does preclude the later suit where the aggrieved party, here ILGO, failed to appeal the district court's dismissal of its claims after the preliminary injunction hearing. However, we also hold that ILGO's as-applied challenge is not barred by either mootness or lack of standing.
 
 I. Background
 
 3
 ILGO, a group of lesbians and gay men of Irish descent, has since 1991 sought to participate in the annual St. Patrick's Day Parade ("the Parade") hosted by AOH. In 1992 and 1993 ILGO filed suit in federal district court to compel AOH to allow it to march in the Parade. These challenges were denied under reasoning anticipating the Supreme Court's decision in Hurley v. Irish-American Gay, Lesbian and Bisexual Group, 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). See New York County Bd. Of Ancient Order of Hibernians v. Dinkins, 814 F.Supp. 358 (S.D.N.Y.1993); Irish Lesbian & Gay Org. v. New York State Bd. Of Ancient Order of Hibernians, 788 F.Supp. 172 (S.D.N.Y.1992). ILGO has since then sought to stage a protest march on the morning of the same day and along the same route as the Parade. In every year since 1992, the police have opposed allowing ILGO to march along the Parade route prior to the Parade, and ILGO has refused to consider alternative times or venues for its march. In 1993 and 1994, ILGO attempted to stage a march without police approval, and several hundred ILGO supporters were arrested.
 
 
 4
 On December 10, 1994, ILGO applied for a formal permit to conduct a parade on 5th avenue from 42nd to 86th Street a few hours before the 1995 Parade. This application was made pursuant to New York City Administrative Code § 10-110, which requires the police commissioner to grant parade permit requests subject to two broad restrictions. The first makes it "unlawful" for the commissioner to grant a permit if "the commissioner has good reason to believe that the proposed procession ... will be disorderly in character or tend to disturb the public peace." The second forbids the use of any street which is subject to "great congestion or traffic" and is "chiefly of a business or mercantile character." Section 10-110 specifically exempts parades, such as the AOH Parade, which have been marching annually for "more than ten years prior to July seventh, nineteen hundred fourteen," from compliance with its provisions.
 
 
 5
 ILGO received no response to its 1995 permit request, and filed an Article 78 petition in New York State Supreme Court to compel the City to grant the permit and to enjoin the city from denying similar permits in future years. Defendants removed the case to federal district court. The District Court (Keenan, J.) denied ILGO's motion for a preliminary injunction and dismissed the case. ILGO appealed the denial of the preliminary injunction to this Court, which affirmed. ILGO also brought a motion under Fed. R. Civ. Proc. § 59(e) seeking clarification as to whether the District Court's judgment applied to ILGO's request for a permanent injunction concerning future permit requests. The District Court refused to amend the judgment, but stated that the decision referred only to the denial of a permit to march on St. Patrick's Day, 1995, since claims regarding future permit applications were not yet ripe. On October 11, 1995, ILGO again applied for a permit to stage an earlier parade on St. Patrick's Day, 1996, using substantially the same route as the AOH parade. The permit request was denied, as was ILGO's motion for a preliminary injunction. The District Court (Koeltl, J.) then granted the Defendants motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on December 24, 1996, finding that ILGO's facial challenge to the City's permitting statute, section 10-110, was precluded by the 1995 litigation. With regard to ILGO's as-applied challenge, the district court held that ILGO lacked standing to sue for damages and that ILGO's requests for declaratory and permanent injunctive relief were moot. ILGO appeals that decision to this Court.
 
 II. Standard of Review
 
 6
 We review de novo the district court's grant of Defendants' motion to dismiss ILGO's claims. See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994). The test for evaluating a 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6). We therefore must accept the allegations of ILGO's complaint as true, and draw all reasonable inferences in ILGO's favor. Sheppard, 18 F.3d at 150. We will not uphold the district court's dismissal unless "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle him to relief." Id. (internal quotations omitted). This standard is "applied with particular strictness when the plaintiff complains of a civil rights violation." Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991) (citations omitted).
 
 III. The Facial Challenge
 
 7
 ILGO challenges the facial constitutionality of section 10-110, arguing that the statute is overbroad and grants the police commissioner unfettered discretion to grant, deny, and delay action on permits based on the content of the parade's message or the identity of its sponsors. ILGO brings this challenge under the First and Fourteenth Amendments of the United States Constitution and under Article I, section 8 of the New York State Constitution. The court below held that this claim had been litigated in 1995, so that ILGO was precluded from raising it again under the doctrine of collateral estoppel. The court further held that any claims that had not been actually raised and litigated in 1995 were barred by the doctrine of res judicata. We agree.
 
 
 8
 The doctrines of res judicata and collateral estoppel are designed to protect "litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Res judicata bars litigation of any claim for relief that was available in a prior suit between the same parties or their privies, whether or not the claim was actually litigated. Id. at 326-27 n. 5, 99 S.Ct. at 649 n. 5; see also Balderman v. United States Veterans Admin., 870 F.2d 57, 62 (2d Cir.1989). Collateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a "full and fair opportunity to litigate ... in [a] prior proceeding" and where "the decision of the issue was necessary to support a valid and final judgment on the merits" in the first action. Metromedia Co. v. Fugazy, 983 F.2d 350, 365 (2d Cir.1992).
 
 
 9
 ILGO contends that no rule of preclusion can apply to this case since the 1995 decision was a tentative ruling regarding the need for a preliminary injunction and so was not intended as a final decision on the merits. Ordinarily, findings of fact and conclusions of law made in a preliminary injunction proceeding do not preclude reexamination of the merits at a subsequent trial. See, e.g., University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose .... findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at a trial on the merits."); Goodheart Clothing Co. v. Laura Goodman Enters., 962 F.2d 268, 274 (2d Cir.1992) (declining to apply rule of preclusion to determinations made at a preliminary injunction stage because "[a] preliminary determination of likelihood of success on the merits ... is ordinarily tentative, pending a trial or motion for summary judgment"). However, in this case, the district court entered a judgment dismissing all of ILGO's claims after the preliminary injunction hearing. The court gave no indication that this ruling was tentative or done without prejudice, and ILGO did not dispute the dismissal at the time. We therefore treat the 1995 decision as a decision on the merits and not simply as a determination of whether to grant or deny a preliminary injunction.
 
 
 10
 ILGO further contends that the application of collateral estoppel is inappropriate because ILGO never asserted a facial challenge in the 1995 litigation.[1] However, the court below identified several instances where ILGO questioned the facial validity of section 10-110 in its 1995 pleadings. ILGO raised allegations that the statute does not require the City to respond to a permit application within a reasonable time, in writing, and with an explanation of the denial in both its Article 78 petition and accompanying Memorandum of Law. ILGO also argued in its Memorandum of Law that if section 10-110 were not read to mandate the issuance of a permit for the protest march, the statute would grant "unfettered discretion" to the Commission of Police. In its supplemental pleadings to the district court, ILGO stated plainly that "Administrative Code § 10-110(a)(2) is unquestionably a prior restraint on speech," and that because administrative officials possessed "the unbridled discretion to allow or disallow a march to take place in spite of the regulations ... [the Code section] must be found unconstitutional as a matter of law both in general and in its application to the matter at bar."
 
 
 11
 The district court's opinion did not explicitly decide whether section 10-110 contained adequate standards to prevent government censorship of speech, but did find section 10-110 to be facially content neutral and a valid time, place, and manner regulation as applied. On this record, we are inclined to agree that the issue of section 10-110's facial validity was implicitly decided in 1995. See Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 130, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992) (stating that "[a] government regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation") (internal quotation omitted).
 
 
 12
 ILGO argues that the district court itself limited the scope of the 1995 litigation when it clarified that its judgment referred only to "the legality of the denial of a permit for the 1995 parade," and stated that ILGO's other claims were not yet ripe. Had the district court excluded the facial challenge from the judgment, then ILGO clearly would not be precluded from raising the issue in another lawsuit. See, e.g., Stolberg v. Members of Bd. of Trustees for State Colleges, 541 F.2d 890 (2d Cir.1976) (holding that where the district court had expressly refused to consider an issue in an earlier contract litigation, plaintiff was not precluded from arguing the issue in a subsequent proceeding between the same parties). However, the district court's clarification did not exclude the facial challenge from the scope of the dismissal. A challenge to the facial constitutionality of the statute under which the permit was denied clearly relates to the legality of a specific permit denial, and was certainly ripe for adjudication in 1995. Since the issue of section 10-110's facial validity was briefed to the district court, the court could not have found that the permit denial was legal without deciding these questions. Absent any explicit statement to the contrary, we must assume that the district court disposed of the facial constitutionality issue by dismissing the case.
 
 
 13
 Even if the 1995 decision were final in a procedural sense, ILGO still must have had a "full and fair opportunity to litigate" the issue for collateral estoppel to apply. See Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir.1995) (identifying a full and fair opportunity to litigate as one of several elements that must be met before collateral estoppel precludes further litigation).[2] It does not appear that the facial validity issue received much attention from either the parties or the court in 1995. Although ILGO had briefly raised the facial unconstitutionality of the statute in its pleadings, no party presented testimony or evidence concerning the City's implementation or interpretation of section 10-110 at the preliminary injunction hearing. See Forsyth County, 505 U.S. at 131, 112 S.Ct. at 2402 (stating that a court must consider the government's interpretation and historical implementation of a statute in evaluating a facial challenge). In fact, the only person to raise the issue was Judge Keenan, who commented at the close of the hearing on the "troublesome" lack of procedural standards in section 10-110. However, he made no mention of the issue in his opinion dismissing the case, other than to say that the code section was "facially content neutral." On this record, it appears that the issue was not fully litigated in 1995. This is not surprising, since the parties had no notice that the district court would decide the merits of the case based only on the limited preliminary injunction proceeding.
 
 
 14
 However, ILGO did have a full and fair opportunity to litigate the issue in that it could have appealed the district court's dismissal of the facial challenge. Judge Keenan gave no notice or indication that he planned to consolidate the preliminary injunction hearing into a trial on the merits pursuant to Fed. R. Civ. Proc. 65(a)(2), and a failure to so notify a party which results in prejudice is grounds for reversal. See Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12, 24 (2d Cir.1971) (reversing dismissal of claim for permanent injunctive relief after a preliminary injunction hearing without any consolidation of that hearing with a trial on the merits); 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2950 at 241 (2d ed. 1995) ("Because it is likely that one or more of the parties will not present their entire case at an unconsolidated preliminary injunction hearing, it ordinarily is improper to decide a case solely on the basis of that type of a hearing."). However, ILGO chose to appeal only the denial of the preliminary injunction. ILGO thus waived its opportunity to pursue the facial challenge, and the propriety of the district court's decision to dismiss the case on the merits is not before us at this time. See, e.g., New Haven Inclusion Cases, 399 U.S. 392, 481, 90 S.Ct. 2054, 2104, 26 L.Ed.2d 691 (1970) (finding a party's request for the return of certain stock precluded by res judicata where the party had failed to make a timely appeal of the initial decision transferring ownership to another party).
 
 
 15
 To the extent that any aspect of ILGO's facial challenge brought in 1996 differs from that which it raised in 1995, the district court correctly held that the claims are barred by the doctrine of res judicata because they could have been raised in the earlier proceeding. Section 10-110, its interpretive regulations found in the Police Department's Administrative Guide Procedure 321-14, and the police department's actual implementation of these rules have not been shown to have changed since 1995. Therefore, any new claims regarding facial validity pursued by ILGO were available in 1995, and so are precluded now. See Balderman, 870 F.2d at 62 ("Res judicata ... prevents the subsequent litigation of any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined.").
 
 
 16
 Finally, ILGO asserts that compelling public policy reasons dictate that the doctrines of res judicata and collateral estoppel should not be applied rigidly to this case. Specifically, ILGO alleges that if res judicata or collateral estoppel prevents the organization from challenging section 10-110, then government officials who use the law to censor expressive activity will be shielded from judicial challenge. However, we do not agree that this is a case that warrants an exception from generally applicable rules. If section 10-110 is overly broad, or lacks procedural safeguards to prevent censorship, then any citizen in New York may challenge the law. See City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988) ("[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license."). A reviewing court that agrees that section 10-110 is constitutionally infirm may easily distinguish Judge Keenan's abbreviated 1995 opinion, which did not squarely address the relevant issues. Therefore, our ruling in this case will not insulate the law from judicial review but will prevent only ILGO from revisiting the question. Considering that ILGO chose not to appeal the 1995 decision, this result is entirely consistent with principles of fairness and judicial efficiency.
 
 IV. The As-Applied Challenge
 
 17
 The district court dismissed ILGO's as-applied challenge to the 1996 permit denial on mootness and standing grounds. The court found that ILGO's requests for declaratory and injunctive relief with respect to the 1996 permit had become moot because the date on which ILGO sought to hold its march, March 16, 1996, had passed, while ILGO's request for permanent injunctive relief was simply "not appropriate" because "the circumstances vary every year with respect to time, place, and manner" of the Parade. The court then dismissed ILGO's remaining claim for compensatory damages on the ground that the organization lacked standing to sue for damages on behalf of its members. Reviewing these conclusions de novo,[3] we disagree with each of the district court's determinations.
 
 
 18
 The mootness doctrine is derived from the constitutional requirement that federal courts may only decide live cases or controversies. See U.S. Const. art. III; Liner v. Jafco, Inc., 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347 (1964). A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur. See County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir.1983). However, a case is not moot if the underlying dispute between the two parties is "capable of repetition, yet evading review." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976) (citation omitted). To show that a case falls within this exception, a party must demonstrate that " '(1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.' " Granato v. Bane, 74 F.3d 406, 411 (2d Cir.1996) (quoting Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982)).
 
 
 19
 The district court suggested that, because ILGO did not raise the "capable of repetition" exception until oral argument, it should be rejected on that basis alone. However, the court went on to address the merits of the argument, and both parties have briefed the issue on appeal. Furthermore, we do not find ILGO's procedural mistakes to bar our consideration of any valid exception to mootness. Federal Rule of Civil Procedure 12(h)(3) requires a court to consider impediments to subject matter jurisdiction at any time during the course of a litigation. See also Fox v. Board of Trustees, 42 F.3d 135, 140 (2d Cir.1994) (stating that the issue of mootness is one of subject matter jurisdiction that may be raised at any time). Just as a federal court should refuse to hear a case that no longer presents a live case or controversy regardless of whether any party has urged dismissal, a court should not dismiss a case that is not moot simply because no party has properly raised an exception. The Federal Rules place the duty to enforce barriers such as mootness on the courts, and our rule is that courts may sua sponte ask the parties to address any exception to mootness that may apply. See, e.g., Rastelli v. Warden, Metro. Correctional Ctr., 782 F.2d 17, 20 (2d Cir.1986) (addressing mootness sua sponte on appeal and concluding that the "capable of repetition exception, yet evading review" exception applied). Since the parties have briefed the issue to this Court, we will consider its merits.
 
 
 20
 ILGO's claims fall within the "capable of repetition, yet evading review" exception. In the last two years, ILGO has had only a few weeks between being notified that its application for a permit was denied and the date of the Parade in which to obtain judicial review. This time period is clearly insufficient for full litigation of ILGO's claims. See, e.g., Martin v. Yellow Freight Sys., Inc., 983 F.2d 1201, 1202 (2d Cir.1993) (holding that the "capable of repetition" exception applied where administrative judge's order could not be fully litigated in 120 days); Rastelli, 782 F.2d at 20 (finding a period of 31 to 119 days to be too short for parole revocation limits to be fully litigated).[4] Given the annual nature of the Parade, and ILGO's repeated attempts to stage a march prior to it, the conduct complained of is almost certain to be repeated. Accordingly, we find that ILGO's claims for declaratory and injunctive relief are not moot. See, e.g., Chabad-Lubavitch of Vt. v. City of Burlington, 936 F.2d 109, 111 (2d Cir.1991) (per curiam) (finding a case not moot where plaintiffs sought a permit to display a menorah in a city park during Chanukah and Chanukah had passed, because the plaintiffs intended to seek such a permit every year and it was unlikely that future permit denials could be reviewed before another Chanukah had finished).
 
 
 21
 Furthermore, we do not agree with the district court that the changing circumstances of each year's parade make ILGO's request for permanent injunctive relief "inappropriate." The district court prematurely credits the Defendants' assertions that the permit denial was due to such factors as traffic and pedestrian congestion, which can change depending on the day and time that each year's Parade is held. On a 12(c) motion, we must draw factual inferences in ILGO's favor and accept the allegations of the complaint as true. Therefore, we must assume that the permit denial was in fact based on discrimination against ILGO due to the content of its message. If ILGO proves this to be the case, then it will be entitled to an injunction to prevent denials based on prejudice in future years. See, e.g., Paulsen v. Lehman, 839 F.Supp. 147, 170 (E.D.N.Y.1993) (issuing a permanent injunction against "any unlawful prior restraint on the plaintiff's right to distribute noncommercial literature or to engage in other First Amendment activity within [certain areas of] Jones Beach State Park" upon finding that the state had unconstitutionally refused to permit plaintiffs to distribute leaflets on Jones Beach).
 
 
 22
 We next address whether ILGO has standing to bring a claim for compensatory damages. An organization may have standing in either of two ways. It may file suit on its own behalf "to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). It may also assert the rights of its members under the doctrine of associational standing. See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343-45, 97 S.Ct. 2434, 2441-42, 53 L.Ed.2d 383 (1977). To bring suit on behalf of its membership, the organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. at 343, 97 S.Ct. at 2441.
 
 
 23
 ILGO's complaint stated that it sought "damages to redress the deprivation by the Defendants of the rights secured to ILGO under the Constitution and laws of the United States." Specifically, ILGO alleged that its "inability lawfully to protest [its] exclusion [from the Parade has] injured ILGO ... in many ways...." Among the alleged injuries, ILGO asserted that,
 
 
 24
 [m]embers of ILGO have been subjected to family rejection and public ridicule, have been told they are not Irish, have been arrested and have lost their jobs. Perhaps most significantly, the exclusion of and related hostility toward ILGO have divided and isolated ILGO from the rest of the Irish community.
 
 
 25
 The district court evaluated ILGO's damages claim only under the rubric of associational standing and found that ILGO failed to meet the third prong of the Hunt test. The court concluded that to establish the injuries alleged in the complaint--that members had suffered humiliation, had lost their jobs, been arrested, and been told they were "not Irish"--would require the participation of individual members in the lawsuit. This determination was obviously correct, but was incomplete because the court failed to evaluate whether ILGO could bring suit on its own behalf.
 
 
 26
 It is well established that "organizations are entitled to sue on their own behalf for injuries they have sustained." Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 n. 19, 102 S.Ct. 1114, 1124 n. 19, 71 L.Ed.2d 214 (1982). To do so, the organization must "meet[ ] the same standing test that applies to individuals .... [by] show[ing] actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." Spann v. Colonial Village, Inc., 899 F.2d 24, 27 (D.C.Cir.1990).
 
 
 27
 The denial of a particular opportunity to express one's views can give rise to a compensable injury. See, e.g., Dellums v. Powell, 566 F.2d 167, 194-195 (D.C.Cir.1977) (holding that the loss of an opportunity to stage a lawful demonstration on the Capitol steps was compensable in damages); Tatum v. Morton, 562 F.2d 1279, 1282-83 (D.C.Cir.1977) (finding plaintiffs could recover damages for the loss of the opportunity to communicate their anti-war message to the public in the manner they had selected); see also Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986) (Marshall, J., concurring) ("When a plaintiff is deprived, for example, of the opportunity to engage in a demonstration to express his political views .... [t]here is no reason why such an injury should not be compensable in damages."). An organization, as well as an individual, may suffer from the lost opportunity to express its message. Cf. Pacific Gas and Elec. Co. v. Public Utilities Comm'n of Cal., 475 U.S. 1, 8, 106 S.Ct. 903, 907, 89 L.Ed.2d 1 (1986) ("The identity of the speaker is not decisive in determining whether speech is protected. Corporations and other associations, like individuals, contribute to the 'discussion, debate, and the dissemination or information and ideas' that the First Amendment seeks to foster.") (quoting First Nat'l Bank v. Bellotti, 435 U.S. 765, 783, 98 S.Ct. 1407, 1419, 55 L.Ed.2d 707 (1978)). That Defendants offered to provide ILGO with other venues and opportunities to express its message may lessen the amount of damages due to ILGO, but ILGO is still entitled to recover if the City unlawfully denied the organization the opportunity to express its message in the way it preferred. Cf. Dellums, 566 F.2d at 195-96 (allowing recovery so long as the award is proportional to the loss actually suffered by the plaintiffs).[5]
 
 
 28
 Even if ILGO's lost opportunity for expression were not a compensable injury, a denial of First Amendment rights may give rise to more tangible harms. See Stachura, 477 U.S. at 307, 106 S.Ct. at 2543 (clarifying that a plaintiff alleging a First Amendment violation under § 1983 could seek compensatory damages for "not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.' ") (alteration in original) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)). Although an association like ILGO cannot suffer humiliation or other emotional distress, ILGO's complaint sets forth sufficient general factual allegations of harm to its reputation arising from the Defendants' conduct to show standing. See Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 58 (2d Cir.1994) (holding that, at the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice to demonstrate standing); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992) ("[O]n a motion to dismiss 'we presume that general allegations embrace those specific facts that are necessary to support the claim.' ") (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990)). ILGO alleged in its complaint that among the "many ways" ILGO had been harmed by its inability to protest lawfully its exclusion from the Parade, "[p]erhaps most significantly, the exclusion of and related hostility toward ILGO have divided and isolated ILGO from the rest of the Irish community." Although AOH's exclusion of ILGO from the Parade is not traceable to the Defendants' conduct, and would not be redressed by a favorable decision in this case, ILGO's complaint, broadly interpreted, does allege that the City's refusal to allow ILGO lawfully to protest its exclusion from the Parade has damaged ILGO's reputation among the Irish community in New York. Such an injury is sufficient to demonstrate standing to sue for compensatory damages, especially since one of ILGO's stated purposes is to combat prejudice against its members within the Irish community. Cf. Southern Mutual Help Assoc., Inc. v. Califano, 574 F.2d 518, 524 (D.C.Cir.1977) (finding that a nonprofit health organization had standing to challenge a Department of Health, Education, and Welfare decision to discontinue funding one of its programs where the decision allegedly affected the good name and reputation of the organization among the funding community).
 
 
 29
 Finally, ILGO also has standing to assert a claim for nominal damages. Nominal damages are available in actions alleging a violation of constitutionally protected rights, even without proof of any actual injury. See Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978) (approving an award of nominal damages to student who had been suspended without an opportunity to respond to the charges against him in violation of his procedural due process rights). Although ILGO did not specifically request nominal damages in its pleadings, we have not precluded the award of nominal damages in the past if the complaint explicitly sought compensatory damages. See, e.g., Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir.1986) (finding that prisoner's § 1983 claim seeking only compensatory and punitive damages was not moot because even if plaintiff were "not [ ] able to establish actual damages ... Beyah will be entitled to recover at least nominal damages"). Therefore, even if ILGO is not able to produce specific facts demonstrating an actual injury at successive stages of the litigation, ILGO may still be entitled to nominal damages upon proof of discrimination by the Defendants.
 
 Conclusion
 
 30
 For the foregoing reasons, we uphold the district court's dismissal of ILGO's facial challenge, but reverse its dismissal of ILGO's as-applied claims because ILGO's requests for declaratory and injunctive relief are not moot, and ILGO has standing to sue for damages.
 
 
 31
 REAL, District Judge, concurring and dissenting:
 
 
 32
 I concur with the majority that ILGO's facial challenge to New York City's parade-permitting ordinance was precluded by Judge Keenan's decision denying the 1995 challenge by ILGO and Judge Koeltl's decision denying the 1996 challenge on the basis of res judicata and collateral estoppel.
 
 1. Constitutional Consideration
 
 33
 I dissent from the majority's holding that the as-applied challenge is not barred by collateral estoppel. The 1995 challenge was factually the same as the 1996 challenge as to application and denial of the parade permit. Judge Keenan's decision denying the permit at the preliminary injunction stage, relied upon by Judge Koeltl in finding claim preclusion, included the following language:
 
 
 34
 ... the Court finds that the decision to deny the second parade permit [was] content-neutral and narrowly tailored to serve a legitimate concern expressed by those charged with the public safety. The Court also finds that there are more than adequate other means for ILGO to communicate the same message on another day. ILGO has no First Amendment right to carry its message to the same audience that will gather to march in and watch the St. Patrick's Day Parade.
 
 
 35
 Judge Keenan, faced with the sixth year that ILGO--from its formation--had sought to parade on the same day, on the same route, and at approximately the same time, very conscientiously considered the importance of First Amendment rights and the consequences of the deprivation of the expressive rights guaranteed by the First Amendment. The walls of Jericho will not fall when the trumpet is played with the same notes and volume again and again. Judge Koeltl's seventh consideration of the same application concerning the same parade, on the same day, on the same route and at approximately the same time, was properly dismissed on collateral estoppel and res judicata grounds.
 
 2. Standing--Damages--Mootness
 
 36
 (a) Mootness
 
 
 37
 Mootness may result from two sources, either in the trial court or in the Court of Appeals. Here, it is my opinion that mootness results from ILGO's failure to appeal the denial of its motion for preliminary injunction in the trial court. Judge Koeltl had found that because res judicata and collateral estoppel precluded the constitutional claim on the facts of same parade, same route and an immaterial minor difference in more intrusive time of the parade, the permanent injunction became moot. As this court now considers the claims of ILGO applying res judicata and collateral estoppel, those claims certainly are now moot. Although the district court dismissed the claims under Rule 12(c) of the Federal Rules of Civil Procedure, the hearing on the preliminary injunction met standard sufficient to provide the facts necessary to join all issues alleged in the pleadings and make them then appealable to this Court.
 
 
 38
 (b) Standing
 
 
 39
 ILGO brought this action seeking "compensatory damages to redress the constitutional deprivations it has suffered." ILGO's prayer was only: "awarding plaintiff compensatory damages against all defendants, jointly and severally, in an amount...." No claim is made for nominal damages. Moreover, as the trial court relates, "ILGO argues affirmatively in its brief that it does not claim nominal damages, but that its damages are substantial and predicated upon real and compensable injuries." It is too late now in this Court "to breathe life into a moribund dispute." McCabe v. Nassau County Medical Ctr., 453 F.2d 698, 702 (2d Cir.1971). There being no cognizable constitutional claim, there is no need to be concerned about ILGO's standing to sue on behalf of its members. Moreover, the City has never denied ILGO the right to protest in the proper application of Section 10-110 of the City's Administrative Code, the application of constitutional public safety concerns and reasonable time, place and manner restrictions. ILGO has not alleged that the St. Patrick's Day Parade is the only method available to it for expression of the Lesbian and Gay philosophy. One hundred to one hundred and fifty large parades occur annually in Manhattan, 15 of which are normally accommodated on Fifth Avenue. All of these, professing some element of First Amendment rights. In this case, the city has committed no violation of the public safety concerns, reasonable time, place or manner required by Section 10-110 by its denial of the parade permit requested by ILGO.
 
 
 40
 ILGO has no standing to bring this action on behalf of its members because ILGO fails the third prong of the test set forth in Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343-45, 97 S.Ct. 2434, 2441-42, 53 L.Ed.2d 383 (1977). Each member of ILGO will have a different concern for which he or she would claim damages. Nothing in this lawsuit would permit these individuals to prove their individual claim without personal participation in an allegation of an individual denial of a First Amendment right and the damages flowing from a constitutional violation. Neither is present here.
 
 
 41
 (c) Damages
 
 
 42
 Since I do not find any constitutional violation in the denial of the permit to ILGO, there can be no damage, either compensatory or nominal. Damages must be related to and result from a constitutional violation.
 
 
 43
 ILGO's claim of damage is also defective on any pleading of causation. What ILGO pleads as damage in paragraph 48 of its complaint does not flow from an inability to parade in the St. Patrick's Day Parade. The injury claimed is that "Members of ILGO have been subjected to family rejection and public ridicule, have been told they are not Irish, have been arrested and have lost their jobs." None of these alleged injuries are caused by not being able to parade. Perhaps most significantly, "the exclusion of and related hostility toward ILGO have divided and isolated ILGO from the rest of the Irish Community." This allegation makes it clear on the face of the complaint it supports mootness in the absence of any constitutional violation--or causation of the claimed damage.
 
 
 44
 The majority, if I understand its position, would remand even though there is a full record upon which all issues could be decided in the Court of Appeals. The cases cited by the majority in support of a claim for nominal damages involved violation as the predicate to a ruling that a § 1983 plaintiff could recover damages resulting from the violation. Judge Koeltl had a full hearing and denied the preliminary injunction on the grounds that Section 10-110 of the City Administrative Code was constitutional both facially and as applied.
 
 
 45
 The fertile minds of competent lawyers can always add nonsequiturs to continue interminably litigation that is claimed has not been decided or has not been decided properly.
 
 
 46
 On the seventh orbit of Section 10-110 of the City Administrative Code by ILGO, this should be what is now the time to lay to rest what in the words of McCabe (supra) has become "moribund." I would affirm the judgment of the trial court.
 
 
 
 *
 Manuel L. Real, District Judge for the United States District Court for the Central District of California, sitting by designation
 
 
 [1]
 ILGO also argues that res judicata should not apply because a facial challenge is a separate claim for relief from an as-applied challenge. Because we agree with the district court that ILGO did raise a facial challenge in 1995, we do not decide whether res judicata would preclude such a challenge in this case even if it had never been raised. But cf. Parker v. Corbisiero, 825 F.Supp. 49, 55 (S.D.N.Y.1993) (finding that plaintiff's facial and as-applied constitutional challenges to a New York statute could have been raised in an Article 78 proceeding and thus were barred by New York's doctrine of res judicata)
 
 
 [2]
 The required elements are as follows: "(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in a prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits." Central Hudson, 56 F.3d at 368. As stated above, we find that the facial challenge was actually litigated and decided, and was necessary to a final judgment on the merits. We address below the issue of whether the current facial challenge is identical in all respects to the one raised in 1995
 
 
 [3]
 Defendants, relying on Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo, 981 F.2d 50, 58 (2d Cir.1992), assert that the question whether a declaratory judgment action should be dismissed as moot lies within the discretion of the district court, and "a strong showing of error must be made" to reverse a dismissal. However, that standard applies only when a defendant has voluntarily agreed to cease allegedly illegal conduct, and the district court must decide whether no reasonable expectation exists that the conduct will be repeated. See United States v. W.T. Grant Co., 345 U.S. 629, 632-33, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953). The Defendants here have not voluntarily agreed to cease enforcing Section 10-110 against ILGO or to grant ILGO's permit requests in the future. Therefore, the abuse of discretion standard does not apply and we review the district court's determination of mootness under the customary de novo standard. See, e.g., Comer v. Cisneros, 37 F.3d 775, 787 (2d Cir.1994) ("[W]e review de novo questions of standing and mootness because they are questions of law.")
 
 
 [4]
 The district court found that ILGO could not meet the first part of the test because "[t]here is nothing to prevent ILGO from applying for a permit in a timely fashion and challenging a denial in a timely fashion on any grounds that may be available to it." We do not agree that ILGO is to blame for the abbreviated period of review available in this case. Section 10-110 requires permit applications to be made "not less than thirty-six hours previous to the forming or marching" of the proposed procession. ILGO applied for a permit for the 1995 march on December 10, 1994, and on October 11, 1995, for the 1996 parade. Given that ILGO was well within the statutory time period in both cases, we cannot say that ILGO has not been timely in applying for a permit. Furthermore, the Defendants do not dispute that in both years ILGO was not formally informed that its permit application was denied until mid-February. It was thus not possible for ILGO to seek judicial review of this administrative determination until only a few weeks before the Parade. We therefore find no basis in ILGO's conduct to preclude application of the "capable of repetition" exception
 
 
 [5]
 Although the loss of an opportunity to express oneself is a compensable injury, ILGO does not have standing to request damages on behalf of its members to redress this harm. "[W]hether an organization has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought." Warth, 422 U.S. at 515, 95 S.Ct. at 2213. An association generally cannot seek relief in damages for injuries to its members because unless the alleged injury is "common to [its] entire membership, [and] shared by all to an equal degree ... both the fact and extent of injury would require individualized proof." Id. at 515-16, 95 S.Ct. at 2214. ILGO contends that the deprivation of constitutional freedoms complained of here was shared equally by its entire membership. However, any recovery must be based on actual loss, and not on "the abstract value of a constitutional right," Stachura, 477 U.S. at 308, 106 S.Ct. at 2543. Therefore, the testimony of individual members would still be required to establish the extent of reasonably quantifiable loss suffered by each. For instance, any member who had not planned to participate in the protest parade might not be entitled to recover any compensatory damages