NORTHERN SECURITY INSURANCE
COMPANY, Plaintiff,

v.

MITEC TELECOM, INC., Defendant.

Nos. 2:98–CV–19, 2:98–CV–137.

United States District Court,
D. Vermont.

Feb. 4, 1999.

Bruce Calvert Palmer, Downs, Rachlin & Martin, St. Johnsbury Offices, St. Johnsbury, VT, for Northern Security Insurance Company, plaintiff.

Samuel Hoar, Jr., Shapleigh Smith, Jr., Dinse, Knapp & McAndrew, P.C., Burlington, VT, Sheila D. Jones, Cutler & Stanfield, Washington, DC, Sandy K. Feldman, New York City, for Mitec Telecom, Inc., defendant.

Bruce Calvert Palmer, Downs, Rachlin & Martin, St. Johnsbury Offices, St. Johnsbury, VT, for Northern Security Insurance Company, counter-defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

In this complaint for declaratory relief, Plaintiff Northern Security Insurance

Company ("Northern Security") seeks a judgment that Defendant Mitec Telecom, Inc. ("Mitec Telecom") is not entitled to insurance coverage under any policy issued by Northern Security. Pending before the Court are Northern Security's Motion for Judgment on the Pleadings (paper 28), Mitec Telecom's Motion for Partial Summary Judgment (paper 34) and Northern Security's Cross-Motion for Partial Summary Judgment (paper 36).

## I. *Factual Background*

For purposes of these motions, the following facts are undisputed. Northern Security issued a Special Multi-Peril Policy No. SMP 238-679 ("the Policy") to Mitec Systems Corporation ("Mitec Systems"), which provided, among other things, comprehensive general liability ("CGL") coverage effective May 15, 1981 to May 15, 1984. Mitec Systems leased a lot in the Alling Industrial Park located in Williston, Vermont, where it manufactured electronic components.

In 1984, the State of Vermont sued Mitec Systems, alleging that it was responsible for contaminating groundwater migrating from the Alling Industrial Park. In order to enforce Northern Security's obligations to defend and indemnify it against the state lawsuit, Mitec Systems brought a coverage action in the Superior Court of Chittenden County in 1988. Mitec Systems and Northern Security settled their dispute over coverage, and Mitec Systems executed a general release to Northern Security in 1989. In the meantime Mitec Systems had reached a settlement with the state in 1986, and had obtained a general release from the state for itself, its officers, directors, shareholders, successors and assigns.

Mitec Systems was terminated as a Vermont corporation in 1987. In January 1997, counsel for Mr. and Mrs. Gerald Bates of Williston, Vermont notified Mitec Telecom, a Canadian corporation, that groundwater flowing beneath their home and the air within the house is contaminated with trichloroethylene ("TCE"), and that the sources of the contamination were located on the Mitec Systems lot in the Alling Industrial Park.[1] In June 1997, Mitec Telecom gave Northern Security notice of the Bates claim, and requested coverage under the Policy. In August 1997 new counsel for the Bates provided further details of their claim, and made a demand for settlement. Northern Security notified Mitec Telecom in November 1997 that it was denying coverage under the Policy, and immediately filed a complaint in the Superior Court of Washington County, seeking a declaration that Mitec Telecom is not entitled to coverage.

Following removal to federal court, Mitec Telecom answered and counterclaimed against Northern Security, seeking a declaration that Northern Security is obligated to defend and indemnify Mitec Telecom, as well as Mitec Systems' officers, shareholders and directors. Mitec Telecom also seeks a declaration that the release executed by Mitec Systems in its 1988 coverage action did not absolve Northern Security of its duty to defend and indemnify Mitec Telecom and Mitec Systems' officers, shareholders and directors for any and all potential claims of contamination by Mitec Systems.

Northern Security has moved for judgment on the pleadings, claiming that it has no duty to pay for any costs that Mitec Telecom may have incurred prior to the date that Mitec Telecom tenders an actual suit to Northern Security for defense, because it has no duty to defend or pay costs associated with possible claims. Mitec Telecom has moved for partial summary

---

1. Mitec Telecom has alleged that it "acquired [Mitec Systems"] rights under the ... Policy issued by Northern Security. Answer and Counterclaim, ¶ 8 (paper 18). Northern Security has denied this allegation. Answer to Counterclaim, ¶ 8 (paper 21). Neither party, however, has provided the Court with facts concerning a relationship or lack thereof between Mitec Systems and Mitec Telecom.

judgment, arguing that the Court should rule that Northern Security's duty to defend was triggered when Mitec Telecom received notification of the Bates claim. In its cross-motion for partial summary judgment, Northern Security argues that the Bates demand letter is not a "suit" under the terms of the Policy.

## II. *Legal Standards*

 A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same test as that applicable to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6). *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998). All allegations of the nonmovant are accepted as true and all reasonable inferences are drawn in its favor. *Id.* The motion must be denied "unless it appears beyond a reasonable doubt that the [nonmovant] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Id.* (internal quotations omitted). If matters outside the pleadings are to be considered, the motion must be treated as one for summary judgment, and the parties given an opportunity to respond accordingly. Fed R.Civ.P. 12(c).

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir.1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

The parties' cross-motions for partial summary judgment deal with the same issue as Northern Security's motion for judgment on the pleadings: whether Northern Security has a duty to defend Mitec Telecom based on the Bates claim. Because the parties have taken the opportunity to present Rule 56 material in connection with this issue, the Court will dispose of all motions under the summary judgment standard.

## III. *Discussion*

 Under Vermont law, an insurance policy must be construed according to its terms and the evident intent of the parties as expressed in the policy language. Disputed terms in an insurance policy should be accorded their "plain, ordinary and popular meaning." *City of Burlington v. National Union Fire Ins. Co.*, 163 Vt. 124, 127–28, 655 A.2d 719, 721 (1994). The language of the Policy states:

[t]he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Policy, CGL section I (paper 38, ex. A). The duty to defend thus attaches to "any suit against the insured seeking damages . . ." "Suit" is not defined in the Policy.

It is undisputed that no *lawsuit* has been tendered or filed against Mitec Telecom. Mitec Telecom argues that "suit" should be interpreted to include demand letters by private parties. Northern Security argues that "suit" as used in the Policy means a proceeding in a court of law or its functional equivalent.

This Court has considered the meaning of "suit" in the context of the duty to defend under a CGL policy on at least two occasions, in *Town of Windsor v. Hartford Accident & Indem. Co.*, 885 F.Supp. 666 (D.Vt.1995) and *Village of Morrisville Water & Light Dept. v. United States Fidelity & Guar. Co.*, 775 F.Supp. 718 (D.Vt. 1991). Both cases involved demands by federal or state environmental authorities for the cleanup costs of environmental pollution. In *Morrisville Water & Light,* the village sought insurance coverage after the Environmental Protection Agency ("EPA") notified it that it was a "potentially responsible party" ("PRP") pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") in connection with shipments of waste materials containing polychlorinated biphenyls ("PCBs") to a site in Missouri. The Court predicted that the Vermont Supreme Court would find that the term "suit" encompassed the EPA's claims against the village. 775 F.Supp. at 732. It reasoned that the EPA letter provided notice to Morrisville not only of the contamination, but of its intention to proceed with its enforcement options should the village fail to respond. It noted that CERCLA's unique aspects, including the potential for joint and several liability for the entire costs of site cleanup regardless of fault, rendered early involvement in development of the administrative record and in settlement discussions vital. *Id.* at 733. It concluded that the consequences of the EPA letter were substantially equivalent to the commencement of a lawsuit. "[T]he EPA's letter to Morrisville was sufficiently coercive and adversarial in nature to constitute a 'suit' within the meaning of the CGL policy." *Id.*

In *Windsor v. Hartford Accident,* the town sought insurance coverage after the state Agency of Natural Resources notified the town that it was a PRP in connection with the disposal of hazardous material at a town landfill. Citing to *Morrisville Water & Light,* the Court likewise concluded that the communications between the state authority and the town were sufficiently coercive and adversarial in nature to constitute the functional equivalent of a suit. *Windsor v. Hartford Accident,* 885 F.Supp. at 669.

█ These cases clearly predict that the Vermont Supreme Court would consider official state or federal notification of a party's PRP status under CERCLA or similar state legislation the functional equivalent of the start of a lawsuit. Mitec Telecom argues that the decisions may be read more broadly as interpreting "suit" to include demand letters in general. This Court does not agree. The letters in *Morrisville Water & Light* and *Windsor v. Hartford Accident* were the functional equivalents of the beginning of lawsuits because the plaintiffs' rights and obligations could have been substantially affected long before any suit would have been filed in a court of law. The EPA and state authorities have investigative and enforcement powers that private parties do not. As the Court wrote, "[i]f it had not agreed to actively respond to the EPA's letter, Morrisville could have lost the opportunity to protect its interests well before the EPA brought a lawsuit against it. In other words, Morrisville had no practical choice other than to voluntarily comply with the EPA's demands." *Morrisville Water & Light,* 775 F.Supp. at 733.

The Bates letter does not bear such hallmarks of coercion. It provides Mitec Telecom with details of the nature and extent of the contamination, advises it that the State is carrying on hydrologic and air quality testing, lists the harm that the Bates have suffered, offers to settle in exchange for payment, and announces that failure to accept the offer may result in future claims for larger sums. Letter of

Aug. 6, 1997 (paper 35, ex. D; paper 38, ex. G). The additional facts urged by Mitec Telecom, that the State continues to investigate the site, the EPA may become involved, and the Bates could assert a cost recovery claim under CERCLA in addition to personal injury and property damage claims, do not convert this private party demand letter into the functional equivalent of a lawsuit.

Several jurisdictions have recognized the significant difference between an EPA letter and a conventional demand letter such as the one at issue here, primarily because of the agency's investigative and enforcement power. *See, e.g., Aetna Cas. and Sur. Co. v. Pintlar Corp.,* 948 F.2d 1507, 1516 (9th Cir.1991) (garden variety demand letter only exposes one to potential threat of future litigation, but PRP notice carries immediate severe implications); *A.Y. McDonald Indus., Inc. v. Insurance Co. of North America,* 475 N.W.2d 607, 629 (Iowa 1991) (EPA PRP letter has more serious consequences than conventional demand letter); *Hazen Paper Co. v. United States Fidel. and Guar. Co.,* 407 Mass. 689, 555 N.E.2d 576, 581–82 (1990) (EPA letter not equivalent of conventional demand letter; naive to characterize it as request for voluntary action); *Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.,* 445 Mich. 558, 519 N.W.2d 864, 871 (1994) (EPA essentially usurps court's role in determining and apportioning liability). This Court is simply not persuaded that the Vermont Supreme Court would construe "suit" as used in the typical CGL policy to encompass private party demand letters.

In the absence of a lawsuit or its functional equivalent, Northern Security's duty to defend the Bates claim has not yet been triggered. Consequently, Northern Security is not currently under a duty to pay for costs that Mitec Telecom has incurred in responding to the Bates claim. This ruling should not be interpreted to hold that Northern Security will never be obligated to pay Mitec Telecom's costs, only that its duty has not arisen by virtue of the Bates demand letter.

## IV. *Conclusion*

Mitec Telecom's Motion for Partial Summary Judgment (paper 34) is DENIED. Northern Security's Motion for Partial Summary Judgment (paper 36) is GRANTED to this extent: Northern Security's duty to defend under the Policy has not been triggered by the Bates demand letter. Northern Security's Motion for Judgment on the Pleadings (98–cv–17 paper 28; 98–cv–137 paper 16), to the extent that it seeks the same ruling as its motion for partial summary judgment, is DENIED as MOOT. To the extent that Northern Security seeks judgment in its favor on its complaint and on the counterclaim, Mot. for Judgment on the Pleadings at 8, its Motion for Judgment on the Pleadings is DENIED, as material facts concerning the relationship between Mitec Systems and Mitec Telecom, the scope of Mitec Systems' release of Northern Security, and the scope of the State's release of Mitec Systems, among other issues, remain in dispute. Cross–Mot. and Opp. at 2 (paper 36).