**Linda A. TASADFOY, Plaintiff,**

**v.**

**Joseph RUGGIERO, et al., Defendants.**

**No. 03CIV.6088(CM)(MDF).**

United States District Court,
S.D. New York.

April 14, 2005.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Plaintiff.

George S. Hodges, John J. Walsh, Boeggeman, George, Hodges & Corde, P.C., White Plains, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

MCMAHON, District Judge.

Linda Tasadfoy is the former Tax Assessor for the Town of Wappinger. She was fired after a Hearing Officer, who held a six-day disciplinary hearing in the autumn of 2002, concluded that she had illegally lowered a property owner's assessment after the time for appealing from assessments had passed and back-dated a document so as to make it appear that the assessment had been timely grieved and lowered. Tasadfoy was also found to have deleted material from Town-owned computers. The matter was referred to the Dutchess County District Attorney, who presented evidence to a grand jury, which indicted Tasadfoy for Offering a False Instrument in the Second Degree (Penal Law § 175.30) and Criminal Tampering in the Fourth Degree (Penal Law § 156.20). The criminal charges were dropped in November 2003, at which time Tasadfoy was instead issued a violation for harassment. Tasadfoy paid a state surcharge of $125 on the violation and received an adjournment in contemplation of a dismissal in May 2004.

Tasadfoy here sues the members of the Town Council of Wappinger and Supervisor Joseph Ruggiero, alleging that she was fired in retaliation for the exercise of her First Amendment rights and that she was selectively prosecuted in violation of her Fourteenth Amendment right to equal protection under the law. Plaintiff does not deny that she reassessed the property known as the Estnyre property after Grievance Day had passed and then back-dated a document to make it appear that she had not done so. Neither does plaintiff deny that she deleted information from Town computers that did not belong to her. The undisputed evidence shows that she did both of these things.

Defendants have moved for summary judgment on a variety of grounds. Their motion is granted, and the case is dismissed.

### Background

Linda Tasadfoy became the Tax Assessor of Wappinger by appointment in September 1997.

Loretta Brunello—described by plaintiff as "a politically connected crony" of several members of the Town Board—was appointed to the position of Assessor's Aide in March 1998. Plaintiff did not like working with Brunello; she found her lazy and incompetent, and suspected that Brunello was secretly "leaking" information about the assessment process to Councilman Joseph Paoloni.

Plaintiff alleges that, on or about May 13, 1999,[1] Paoloni asked plaintiff to assess

---

**1.** This date is not clear from the papers. The Supplemental Complaint (par. 11) states that Paoloni requested the assessment in May 2000. The parties' 56.1 Statements state the date was May 1999 (pars. 4, 5, 66). For purposes of this motion, I use the date in the 56.1 Statements. This is but one of several date discrepancies in the parties' papers—I note several others throughout this opinion—demonstrating the utter carelessness of both parties in filing their papers with this Court. While the discrepancies complicated the Court's consideration of this motion, none

his newly constructed home as "vacant land" rather than as a substantially completed house. Plaintiff refused. She believes that Paoloni has harbored a grudge against her ever since. It is certainly true that Paoloni is no fan of Tasadfoy's; shortly before Grievance Day 2002 (the day on which assessments can be challenged by residents before the Town's Board of Assessment Review), Paoloni wrote to some of his constituents, accusing Tasadfoy of selectively reassessing their property and encouraging them to file grievances. Plaintiff believes that this letter was sent in retaliation for her refusal to reassess his property illegally two or three years earlier.

Plaintiff complained to defendant Ruggiero about Paoloni's letter. She told Ruggiero that is was materially false. Ruggiero asked the Town Attorney and outside counsel who handled tax certiorari matters to investigate Paoloni's accusations; they asked plaintiff to defend her method of assessment, which plaintiff found offensive.

A second incident involved plaintiff's reappointment, which the parties say occurred in November 2001.[2] Although her complaint alleges that the Town wanted to replace her, she was in fact reappointed by a 3–2 vote. Ruggiero and Paoloni voted not to rehire plaintiff.

Tasadfoy claims that Councilman Bettina advised her that the only way she would be reappointed was to persuade a large number of Town employees to attend a Town Board meeting and criticize then Town Supervisor Connie Smith, who was running for reelection against Ruggiero. Plaintiff alleges that she refused to do this because it struck her as improper and/or illegal. Instead, she sent a letter to the members of the Town Board, in which she encouraged them to consider her application on its merits. The letter did not allude to Bettina's purported request. Plaintiff alleges that Bettina voted to reappoint her because he was concerned that if his attempt to politicize the Assessor's Office became public it would backfire.

I note that Paoloni, Bettina and Ruggiero dispute many of plaintiff's allegations about these matters. I need not get into any of that now. For purposes of the instant motion, I will assume that they are true.

## Events Leading to the Adverse Employment Action

All of the following events took place between May 2002 and November 2003. Except where noted, the facts are undisputed.

### The Illegal Reassessment

The Board of Assessment Review (BAR) is comprised of five citizens of Wappinger who meet once a year, on Grievance Day, to hear property owners' appeals from changes in the assessed value of their property and to make final determinations thereon. None of the named defendants (the members of the Town Board) is a member of the BAR.

As part of her duties, plaintiff prepared a tentative tax roll, and changes in notice of assessment were mailed to property owners. Grievance Day in Wappinger is May 28 of every year. Property owners have until that day to file their appeals of changes in assessments (known as "Complaint of Real Property Assessment"). Following the meeting, plaintiff prepared a final tax roll (Form 501), as well as a

---

rose to the level of a genuine issue of material fact.

**2.** Elsewhere in the papers it states that plaintiff was appointed to a six year term as Assessor in 1997, which means she would not be up for reappointment until 2003. However, since everyone seems to agree that Tasadfoy was reappointed in November 2001, perhaps the error lies in the date of her initial appointment or the length of her term.

document called Notice of Determination of the Board of Assessment Review, which chronicles all the decisions made by the BAR at the Grievance Day meeting. After plaintiff prepared those forms, the BAR members would come to the Tax Assessor's Office to sign it under penalty of perjury. The forms were thereafter submitted to Dutchess County.

In 2002, plaintiff reassessed a certain commercial property, known as the Estnyre property, raising its valuation from $2.8 million to $5 million. Despite this massive change in the property's assessed value, as of Grievance Day 2002 (May 28, 2002), no one had filed a Complaint of Real Property Assessment concerning the Estnyre property.[3]

On May 30 or June 1, plaintiff received a call from Mr. Ray Wood, the property manager for the Estnyre property. Wood begged plaintiff to come and inspect the property. He indicated that a major tenant had moved out of the property and that he had suffered a significant loss in income as a result.

Although Grievance Day had come and gone, plaintiff went out to the property on two separate occasions, inspected it, and agreed with Wood to reduce the assessment to $3.1 million.

Plaintiff prepared a Complaint of Real Property Assessment for the Estnyre property, indicated thereon that the parties stipulated to reduce the assessment as

aforesaid, and signed it on behalf of the Town. Wood signed it as well. Plaintiff backdated the form to May 28, 2002, to make it appear that all this had been done in a timely manner. Plaintiff testified at her deposition that she knew this was improper.

Plaintiff drafted the final tax roll (Form 501) for 2002 and the Notice of Determination. On the Form 501, she included the Estnyre property at the stipulated valued rather than at its assessed value when the clock struck midnight to end Grievance Day. And she added the Estnyre property to the list of properties discussed on Grievance Day, although it had not been before the BAR.

These documents were presented to the BAR members for their signature. The members signed the document, under penalty of perjury. They did not examine it or notice that it reflected actions not taken by them.

Plaintiff claims to have advised Ruggiero of what she had done, and, for purposes of this motion, I will assume that to be true.[4] Whenever he learned about it, Ruggiero took the matter up at the June meeting of the Town Board. He then asked plaintiff to explain her conduct to the members of the Board at its July 2002 meeting. Ruggiero thereafter asked the Town Attorney, Albert Roberts, Esq., to look into the matter. No disciplinary action was taken against plaintiff pending Roberts' investigation.[5]

---

**3.** The Hearing Officer would later conclude that this unilateral reassessment, based on extrapolations from 15–year–old data, was completely unjustified.

**4.** Ruggiero testified that he first learned about the post-Grievance Day reduction in the Estnyre assessment from Paoloni in June, prior to the June Town Board meeting.

**5.** The parties agree that Paoloni sent his letter to his constituents in 2002, triggering plaintiff's complaint to Ruggiero and the investiga-

tion discussed above (page 3). There appears to have been a contemporaneous response to the Estnyre reassessment, but the parties' submissions do not make it clear whether a particular investigation by the Town Attorney encompassed Paoloni's letter as well as Estnyre, whether there were two simultaneous investigations, or whether the Town Attorney's inquiry into Tasadfoy's assessment practices merged into his inquiry into the Estnyre reassessment. The distinction is not relevant to the instant motion, however, because I conclude that the results of the Estnyre inves-

*The Computer Incident*

On or about August 19, 2002,[6] while she was under investigation, Tasadfoy discovered that a memorandum she was writing to Ruggiero, complaining about Brunello's job performance, was on the computer screen at Brunello's desk. Plaintiff claims to have been searching for a different document, using Brunello's computer, when she saw her letter. The letter had not been intended for Brunello's eyes.

Plaintiff believed that her "privacy" had been invaded, so she waited until Brunello left work, and then instructed a part-time Tax Assessor's Aide, Kathy Pagan, to "cut all of her [Pagan's] files from the server and send them to her 'A' drive to a disk." (Pl. and Def. 56.1 Statements at ¶ 36.) Tasadfoy did the same to Brunello's computer and to her own. She also "cut and pasted" certain documents from the hard drive on Brunello's computer and put them on a disk. She then placed the disks in her desk.

That evening, Tasadfoy advised Ruggiero that she had removed all of the Assessor's Office documents from the server and the hard drive of the Town's computers. She explained that she had done so because the draft of her letter had been found on Brunello's computer. Ruggiero told her to go home.

The next day, plaintiff was suspended from work with pay. The Town shut down its entire computer system for a day so it could make sure there were no other instances of tampering. It shut down the Assessor's Office computer system for considerably longer, while the integrity of the system was assessed. The Town incurred expense in so doing.

*The Section 75 Hearing*

The Town Board voted to prefer four disciplinary charges against Tasadfoy: knowingly submitting the backdated Estnyre Complaint and knowingly reducing the Estnyre assessment after Grievance Day; lying about certain details relating to the backdated filing; intentionally deleting records from the Town's Computer; and belatedly mailing Notices of Change of Assessment. On October 16, 2002, Ruggiero advised plaintiff, by letter, of her right to a hearing and of the disciplinary charges against her.

A six day disciplinary hearing pursuant to Section 75 of New York's Civil Service Law took place before Stephen J. Wing, Esq. Testimony was taken on November 19, 2002 and January 17, February 20, April 3–4 and May 29, 2003.

Both sides placed extensive evidence into the record. Plaintiff—who by that time was under indictment (see below)— did not testify, and indicated in advance her intent "not to be bound" by the findings of the Hearing Officer or the Town Board. Instead, she said, she would leave her fate to be determined by this Court. Her admissions to Ruggiero, which she has never denied making, were part of the record of proceedings.

Plaintiff argued that she was being selectively prosecuted for signing a false statement, when the BAR members had "done the same thing" by signing the forms that she had unilaterally and fraudulently altered under penalty of perjury. Plaintiff defended herself against the charges that she had permanently deleted documents from Town computers by noting that she had backed up all deleted

---

tigation, together with other actions taken by plaintiff, discussed below (pages 11–15), supercede any possibility of retaliation for the incident involving Paoloni's letter.

**6.** Defendants claim this incident occurred on August 16, 2002; the exact date, and therefore the discrepancy, is irrelevant for purposes of this decision.

documents on a disk that she had kept in her possession.

Declining to await the results of the disciplinary hearing, plaintiff commenced this action on August 13, 2003, in which she seeks relief pursuant to 42 U.S.C. § 1983 for alleged First Amendment retaliation and selective prosecution.

A few weeks later, on September 4, 2003, Hearing Officer Wing reported to the Town Board his recommendation that plaintiff be found guilty on all counts except the late filing of Notices of Change in Assessment. Wing recommended that plaintiff be removed from office. She was, by vote of the Town Board on September 16, 2003.

### The Criminal Investigation

Both the Estnyre assessment matter and the computer matter were referred for investigation to the Dutchess County Sheriff's Office in August 2002. In connection with that investigation, Brunello filed an affidavit, alleging that certain documents had been permanently deleted from her computer.

On November 25, 2002, the Assistant District Attorney in charge of the investigation contacted plaintiff's counsel and advised him that the County "may" allow plaintiff to plead to harassment—a violation—if Tasadfoy resigned and paid "token" restitution (presumably, for the expense the Town incurred in checking out its computer system). Plaintiff did not resign. She was indicted on December 2, 2002, for the crimes of Offering a False Instrument in the Second Degree and Criminal Tampering in the Fourth Degree.

As noted above, the criminal charges were dropped in November 2003, shortly after Tasadfoy was fired. She instead paid a state surcharge of $125 for the violation and received an adjournment in contemplation of a dismissal in May 2004.

### Standard for Summary Judgment

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

■ Because a district court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved . . . in favor of either party," *id.* at 250, 106 S.Ct. at 2511, the non-moving

party, in order to defeat the motion, must produce "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party...." If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249, 106 S.Ct. at 2510 (citations omitted). While the Court must view the record "in the light most favorable to the non-moving party," *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir.1989) (citations omitted), and "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (citations omitted), the non-moving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

Plaintiff challenges the disciplinary action taken against her on two grounds. Neither has the slightest merit.

### First Amendment Retaliation

Plaintiff alleges that she was disciplined in retaliation for speaking out on two matters of public concern: defendant Paoloni's letter to his constituents raising questions about the integrity of the tax assessment process (allegedly in retaliation for plaintiff's refusal to assess Paoloni's newly built house as vacant land) and defendant Bettina's purported comment to plaintiff in the parking lot about what she would have to do in order to be reappointed. Defendants are entitled to summary judgment on these claims.

■ In order to make out a prima facie case of retaliatory discharge, plaintiff must prove that she engaged in a protected activity known to defendant, she was subjected to adverse employment action, and there is a causal connection between the protected activity and the adverse employment action. *See Feingold v. New York*, 366 F.3d 138, 156 (2d Cir.2004). Obviously, plaintiff has alleged adverse employment action—she was fired. I would prefer to assume, for purposes of the instant motion, that plaintiff satisfied her burden of demonstrating that her speech was constitutionally protected, because it is so obvious that Tasadfoy has not raised any issue of fact concerning the third prong of the test—causal connection. However, I am expected to do things in a certain order, so I will first consider (briefly) the allegedly protected speech that purportedly led to retaliation against plaintiff.

■ I begin by noting that it is difficult to figure out what speech of plaintiff's is the basis for her First Amendment retaliation claim. In connection with the Paoloni reassessment incident, the Supplemental Complaint fails to identify any contemporaneous speech of plaintiff's regarding this incident that would qualify as protected. (Supp.Cplt.pars.11, 12, 13, 30, 32.) This is understandable, since it is well settled that no retaliation claim lies when there is a gap of several years between the protected speech and the allegedly retaliatory action. *See, e.g., Clark County School District v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

Instead, plaintiff appears to identify as her constitutionally protected speech her complaint to Ruggiero about Paoloni's letter to his constituents, in which he criticized her job performance. Plaintiff contends that Paolini's letter was motivated by Paoloni's ire that plaintiff had not acceded to his illicit request several years earlier. But it is what plaintiff said, not what Paoloni said or what motivated him to say it, that is relevant to the constitutional assessment.

■ Defendants urge that plaintiff's complaint to Ruggiero about the material

falsity of Paoloni's letter is purely private speech, in that she was merely reacting, in private (not publicly), to a criticism of her job performance. Purely private speech by a public employee cannot be the basis for a § 1983 action.

Erring on the side of caution (and because I am going to dismiss the claim in any event), I conclude that this complaint constitutes protected speech. Paoloni's letter did more than criticize Tasadfoy's job performance. It alleged that she was derelict in performing a duty that was of great concern to the public. Indeed, although it did not say so in so many words, the letter intimated that plaintiff might be engaged in the illegal practice of "selective assessment"—or processing scheduled reassessments of properties out of order— and of reassessing properties without using a consistent benchmark, both of which are violations of the Real Property Tax Law. *See* N.Y. Real Property Tax Law § 305 (McKinney's 2000 & Supp.2005). (*See also* Letter from J. Paoloni to Rider Family, undated, attached as Exh.3 to Affirmation in Opposition to Motion for Summary Judgment, dated June 3, 2004 ("Nicaj Aff.").) Tasadfoy's response to the letter, while made privately to Ruggiero, came in response to that allegation, and thus touched on a matter of public concern: whether assessment practices followed by her office conformed to law.

■ Next I turn to the Bettina incident. The only speech of plaintiff's alleged in connection therewith is her letter to the members of the Town Board, encouraging them to consider her application on the merits. Here, plaintiff truly confuses her speech with the motives of others and erroneously conflates the two. She claims that Bettina asked her to do something which she thought was improper or illegal. She did not do it. Neither did she complain, publicly or even privately, about Bettina's request. Instead, the only

speech she engaged in was the sending of a letter to Town Board Members, in which she listed some accomplishments she and her staff had achieved during her tenure as Tax Assessor, and urged that those accomplishments "should be the only things to consider in my reappointment." (*See* Letter from L. Tasadfoy to Wappinger Town Board Members, undated, attached as Exh. 2 to Nicaj Aff.) The letter is an effort by plaintiff to lobby to keep her job. That is a matter of personal concern to plaintiff, not a matter of public concern. Plaintiff's emphasis on her allegation that Bettina voted to reappoint her to cover his tracks is misplaced because Bettina's motive in casting his vote is irrelevant to any claim of retaliation against her for *her* speech. Moreover, she suffered no immediate retaliation, because she was reappointed.

■ Having so concluded, I nonetheless find that plaintiff has not even remotely satisfied her burden of demonstrating causality—even assuming that any arguably protected speech touches on a matter of public concern.

Plaintiff was disciplined beginning in August 2002, when she was suspended without pay. Paoloni's alleged request for an illegal reassessment was made in May 1999 (or perhaps 2000); the Bettina remark in the parking lot—if it was made at all—was made in September 2001. Plaintiff sent her letter to the Town Board in the autumn of 2001. Paoloni's letter to his constituents was sent in May 2002, and plaintiff claims to have complained to Ruggiero that same month.

On these facts, Plaintiff fails to raise an inference of causation for two separate reasons: there is too great a time gap between the protected speech and the alleged retaliation, and there were intervening causal events that occurred after the

protected speech but before the alleged retaliation.

■ In this Circuit, an inference of causation is defeated (1) if the allegedly retaliatory discharge took place at a temporal remove from the protected activity; or (2) if there was an intervening causal event that occurred between the protected activity and the allegedly retaliatory discharge. *See, e.g., Adeniji v. Admin. for Children Services, NYC,* 43 F.Supp.2d 407, 433 (S.D.N.Y.1999). Almost a full year passed between the alleged Bettina incident (including any speech of plaintiff's in connection therewith) and Tasadfoy's suspension. Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation. *See, e.g., id.* at 433–34. One year between protected activity and discharge are well beyond the time frame for inferring retaliatory causation. *Breeden,* 532 U.S. at 273–74, 121 S.Ct. 1508 (citing with approval cases dismissing retaliation claims where adverse employment action followed protected activity by three to four months).

Furthermore, on this record, a reasonable fact-finder would have to conclude that substantial events intervened between any instances of protected speech and the allegedly retaliatory activity. Three of the four specific charges preferred against plaintiff grew out of (1) an admitted violation of the law—specifically, Real Property Tax Law § 524, and (2) actions relating to the obliteration of documents from co-workers' computers.[7] The events that precipitated the charges are paradigmatic examples of intervening acts that are so obviously the proximate cause of the adverse employment action that they cancel out any inference of causation.

Moreover, plaintiff's termination—which is the act she complains of here—was not voted on by the Town Board until the autumn of 2003, well over a year after any "protected speech" occurred, and after a lengthy and fulsome Section 75 hearing. The recommendation to fire plaintiff was made by an independent hearing officer against whom no allegation of retaliatory conduct has been lodged. The hearing and the hearing officer's recommendation that plaintiff be fired are additional intervening acts that render an inference of causation impossible in this case.[8]

The undisputed evidence shows that defendants did not take any disciplinary action against plaintiff until she committed the acts for which she was ultimately found guilty by an independent hearing officer. Her First Amendment retaliation claim is not just meritless—it is frivolous.

### Denial of Equal Protection: Selective Prosecution

■ To establish a denial of equal protection under 42 U.S.C. § 1983, plaintiff must prove (1) that compared with others similarly situated, she was selectively treated, and (2) that the selective treatment was motivated by some impermissible condition—race or religion, for example, or (as in this case) to punish the plaintiff for her exercise of some constitutional right. *Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996); *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995).

The right in question is allegedly plaintiff's right to free speech. The failure of plaintiff to raise an issue of fact on her First Amendment retaliation claim is, in and of itself, fatal to her equal protection claim.

---

7. The fourth charge—sending out Notices belatedly—was not sustained and so did not form the basis for plaintiff's dismissal.

8. Inexplicably, defendants did not make this argument. That does not prevent me from justifying my decision on this basis.

However, Tasadfoy's claim also fails because she has not identified a single person who was treated differently than she was even though "situated similarly"—as the law understands that term—to her.

The test of whether two people are "similarly situated" is whether a prudent person, looking objectively at the two instances of conduct, would think them roughly equivalent and the protagonists in more or less the same situation. Exact correlation is neither likely nor necessary. But as the First Circuit said in *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir.1989), apples should be compared to apples. Thus, the test is whether the two protagonists are similar "in all material aspects."

The Second Circuit has adopted a somewhat modified version of the "similar in all material aspects" standard. *Shumway v. United Parcel Service, Inc.,* 118 F.3d 60 (2d Cir.1997). To satisfy that standard, the actors who plaintiff claims should have been disciplined but were not must have been engaged in conduct comparable to her own. Also, the allegedly comparable actors must have been "subject to the same performance evaluation and discipline standards." *Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir.2000).

Plaintiff first compares herself to the members of the BAR, who, according to plaintiff, committed perjury when they attested to the Form 501 and Notice of Determination that indicated that the BAR took timely action with respect to the Estnyre property when in fact it had not done so. Her "similarly situated" claim fails in the following respects:

1. The BAR members are not civil service employees of the Town of Wappinger, but citizen volunteers to sit on the Board and meet once a year. They are not subject to Section 75 of the Civil Service Law.

Thus, they and she are subject to different performance evaluation and discipline standards.

2. The BAR members were unquestionably derelict in relying on Tasadfoy not to alter information on the Form 501. They should have examined the completed form closely before they signed it in order to ensure its accuracy. But they did not create false evidence, as plaintiff did when she backdated the Complaint or made the altered entry on the Form 501. Thus their action, while clearly negligent, was not of comparable seriousness to plaintiff's, and no reasonable person could conclude otherwise.

3. The Dutchess County District Attorney's Office presented plaintiff to the Grand Jury because it concluded that she had *intentionally* altered a public business record. But as the Assistant District Attorney who handled plaintiff's case testified, he concluded that the BAR members could not be prosecuted because they lacked criminal intent (intent to deceive) when they signed the documents. On the undisputed evidence before this court, no other conclusion is possible. For this reason as well, the BAR members' attestation of the Form 501 that Tasadfoy had altered was not of the same degree of seriousness as her actions in connection therewith. Intentional actions cannot reasonably be compared with negligent ones.

4. Finally, the BAR members did not tamper with City property, as plaintiff did in connection with the computer incident. Tasadfoy's multiple culpable actions are not comparably serious to the BAR members' single transgression.

In order to accomplish the feat of illegally reducing the assessment on the Estnyre property, plaintiff had to both falsify documents and count on the fact that the BAR members would not examine her work. Her confidence in their trust in her, and

their consequent negligence, was amply justified. But when she claims that the BAR members and she are similarly situated, plaintiff sounds like the proverbial parent killer who pleads for mercy because he is an orphan. Her argument is so utterly unpersuasive that no reasonable trier of fact could possibly accept it.

 The second allegedly comparable actor is Brunello. Plaintiff claims that Brunello perjured herself by filing an affidavit with the Dutchess County Sheriff's Office in which she said that "documents had been deleted from [her] computer, with no possibility of recovery." (Pl. 56.1 Statement at ¶ 141.)

But the documents WERE permanently deleted from Brunello's computer. When Brunello tried to locate them, they were no longer on the machine's hard drive. After Tasadfoy took them off Brunello's computer, they could no longer be recovered from that computer. The fact that plaintiff had maintained a back-up copy of the deleted documents, and that some of the deleted documents could be found on a different computer, does not make Brunello's affidavit false. It merely ameliorates the long-term impact of Tasadfoy's tampering.

Thus, plaintiff's selective prosecution claim, like her First Amendment retaliation claim, is without foundation.

### Conclusion

For the reasons stated above, the defendant's motion for summary judgment is granted and the complaint is dismissed with prejudice and with costs to the defendant. The Clerk of the Court is directed to enter judgment for defendant and to close the file.